William TAPLICK, Petitioner-Respondent,

v.

CITY OF MADISON PERSONNEL BOARD, Appellant-Petitioner.

Supreme Court

*No. 78–531. Argued June 3, 1980.—Decided June 27, 1980.*

(Also reported in 293 N.W.2d 173.)

For the appellant-petitioner the cause was argued by *Larry W. O'Brien*, assistant city attorney, with whom on the briefs was *Henry A. Gempeler*, city attorney.

For the petitioner-respondent there was a brief by *Kristine G. Foate* and *Rameker & Rudoy, S.C.*, of Madison, and oral argument by *Ms. Foate*.

CONNOR T. HANSEN, J.  This review concerns the entitlement to due process of an applicant for a civil service position who was denied consideration for the job.

In April, 1977, William Taplick applied for the position of Programmer III with the City of Madison Data Processing Division. He was not a city employee at the time of his application, although he had previously been employed by the city in another capacity.

Sec. 3.35(6)(c)[1] of the Madison General Ordinances provides that the city personnel director may refuse to examine an applicant for city employment or to certify an applicant as eligible for such employment upon specified grounds. The ordinance does not require that the applicant be given a statement of reasons why he was rejected for employment or be given any opportunity to refute those reasons at a hearing.

In May, 1977, Taplick was notified by a letter from a city personnel technician that he was excluded from further consideration for the Programmer III position. No reasons were given for the decision not to certify him as eligible for the position. The letter stated in part:

"Thank you for your recent application to the position of Programmer III with the City of Madison.

---

[1] Sec. 3.35(6)(c) provides:

"The Personnel Director may refuse to examine the applicant, or after examination to certify as eligible, who is found to lack any of the preliminary requirements established for the examination for the position of employment for which he applies, or who is physically so disabled as to be rendered unfit for the performance of the duties of the position to which he seeks appointment, or who is addicted to the habitual use of intoxicating liquors to excess or has been guilty of any crime or of infamous or notoriously disgraceful conduct, or who has been dismissed from the public service for delinquency or misconduct, or who has made a false statement of any material fact; or directly or indirectly shall give, pay or promise to give any money, service or other valuable thing to any person for or on account of, or in connection with, his test, or appointment; or has practiced, or attempted to practice any deception or fraud in his application, in his certificate, in his examination or in securing his eligibility or appointment, or refuses to furnish testimony as required by law." This provision is now sec. 3.35(7)(e).

"Each application to this position was carefully reviewed to determine those candidates whose background, by their training, experience, achievements and responsibilities, appeared to most closely match the criteria identified in the job announcement for this position.

"Although you have not been included in the group of candidates to be given further consideration, we would like to stress that this decision is not an adverse reflection of your abilities and achievements."

Taplick appealed the decision to the Madison Personnel Board. At its meeting on June 14, 1977, the board reviewed a written opinion of the city attorney stating that those sections of the Madison General Ordinances relating to the civil service system provided a right of appeal only to city employees, and that the board was without jurisdiction to entertain appeals by non-employees such as Taplick. In apparent reliance on this opinion the board voted to dismiss Taplick's appeal. At a subsequent meeting on July 6, 1977, the board affirmed its earlier decision and again voted to deny the appeal.

Thereafter Taplick petitioned for a writ of certiorari in Dane county circuit court to review the personnel board's action. The trial court concluded that Taplick "probably did not have standing under the applicable ordinance and rules to question the refusal to certify him for the vacant position," and that this absence of a right to review the personnel director's decision constituted a denial of due process. Therefore, the trial court held that Taplick was constitutionally entitled to a fair hearing before either the secretary of the personnel board or the board itself where he would have an opportunity to refute the reasons for the refusal to certify him. On October 3, 1978, the trial court issued an order requiring such a hearing.

The personnel board appealed the order to the court of appeals contending that Taplick had no constitutional right to be informed of the reasons why he was elim-

inated from further consideration for the vacant position or to be given an opportunity to refute those reasons at a hearing. The court of appeals affirmed the order. *Taplick v. City of Madison Personnel Board,* 90 Wis.2d 500, 290 N.W.2d 301 (Ct. App. 1979). The court of appeals agreed with the trial court that Taplick had no right under the ordinances and rules to appeal his screenout to the personnel board. However, the court of appeals concluded that sec. 3.35(6)(c) of the Madison General Ordinances creates a property interest—the right to be certified as eligible for public employment unless one of the criteria for ineligibility exists—which entitled Taplick to due process. Accordingly, the court of appeals held that Taplick was entitled to be informed of the reasons for the personnel director's refusal to certify him as eligible for city employment and an opportunity to refute those reasons. We conclude that the ordinance creates no property interest and that the personnel director's decision implicated no liberty interest; consequently, we reverse.

I.

Section 3.35 of the Madison General Ordinances is a comprehensive set of rules governing the Madison civil service system. Sec. 3.35(1) provided, in part, at the time of Taplick's attempted appeal to the personnel board:

". . . All City officers and employees . . . shall be selected, hold their status . . . pursuant to this ordinance."

Under the scheme of this ordinance, the personnel director, among other things, is in charge of applications for employment and the examination and certification of all applicants for positions within the civil service system. He has the authority to refuse to examine an applicant or to refuse to certify an applicant as eligible for a position on the basis of certain criteria set forth in sec.

3.35(6)(c). Under sec. 3.35(3)(f) in effect at the time of Taplick's appeal,[2] "any action" by the personnel director could be appealed to the personnel board:

"(f) The Board shall hear appeals from any action taken by the Personnel Director in any matter arising under Section 3.35, upon the application of any interested party."

Were it not for other provisions of the civil service ordinance, it could be argued that a literal reading of sec. 3.35(3)(f) granted all non-employee applicants for civil service positions the right to appeal a decision of the personnel director refusing to certify an applicant as eligible for a position.

However, sec. 3.35(4) of the civil service ordinance gives the personnel board the right to formulate rules for the administration of the civil service system which must be approved by the common council. Sec. 3.35(4) provides:

"The Personnel Board shall formulate rules and regulations for the administration of the said civil service system, which, with amendments thereto, shall be subject to approval by the Common Council. The provisions of all such rules and regulations shall be construed to be consistent with the provisions of the Madison General Ordinances."

At the time of Taplick's attempted appeal, Personnel Board Rule 17.01[3] granted the right of appeal to "any

---

[2] The civil service ordinance was amended by the Madison common council in October, 1977, while Taplick's writ was pending in circuit court. Sec. 3.35(3)(f) was revised to read:

"The Board shall hear appeals in any matter authorized pursuant to Section 3.35 or the Personnel Rules in accordance with the appeal procedures set forth therein; provided, however, that there shall be no appeal to the Personnel Board in any matter which is grieved or grievable under a labor agreement with the City."

[3] "17.01 *Right of Appeal:*

"Any employee as defined in Madison General Ordinance 3.35 (8) aggrieved by any action as specified in Madison General Ordinance 3.35(11), of the Personnel Director or any appointing

employee" who was "aggrieved by any action as specified in Madison General Ordinance 3.35(11), of the Personnel Director. . . ." Sec. 3.35(11) dealt with decisions affecting suspension, discharge, layoffs, discipline and other personnel matters pertaining solely to employees of the city.

Rule 17.01 was adopted by the Madison common council and, in effect, became a part of the civil service ordinance at that time. *State ex rel. Milwaukee v. Milwaukee E.R. & L. Co.*, 144 Wis. 386, 393, 129 N.W. 623 (1911). That rule restricted the right of appeal to city employees and to employment disputes other than job screening decisions. Consequently, Taplick had no right to appeal the refusal to certify him to the personnel board. Since the ordinance provided no right of appeal, we must consider Taplick's constitutional arguments.

## II.

The issue presented here is whether Taplick has a constitutional right to a statement of reasons and a hearing

authority, Department/Division Head or Board may appeal to the Personnel Board within fifteen (15) days of the time the employee is informed of said action but no later than thirty (30) days after said action becomes effective unless otherwise provided for by Ordinance or rule, by filing with the Personnel Director a written statement of the employee's objections to said action. Exceptions to the time limits above may be granted by the Personnel Board.

"(a) Emergency, provisional, and temporary employees are defined in Madison General Ordinance 3.35(8) have no right to appeal a lay-off, demotion, transfer, or termination necessitated by a reduction in force because of stoppage of work or funds or because of material changes in duties or organization.

"(EXPLANATORY NOTE: The intent of (a) is to deny 'nonpermanent' employees the recourse to an appeal of an action caused by economic necessity since these employees do not possess 'property rights' to those positions nor is such termination regarded as 'imposing a stigma' on the employee's ability to find other work.)"

on the personnel director's decision not to certify him as eligible for the position of employment with the city. The procedural guarantees of the Due Process Clause apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. *Board of Regents v. Roth,* 408 U.S. 564, 569 (1972) ; *Nufer v. Village Bd. of Village of Palmyra,* 92 Wis.2d 289, 296, 284 N.W.2d 649 (1979). Thus, to determine the applicability of due process requirements, we must examine the property and liberty interests of which Taplick claims he was wrongfully deprived.

## PROPERTY INTEREST

The type of property interest entitled to due process protection was discussed in *Board of Regents v. Roth, supra.* Roth was a nontenured university professor who was informed that he would not be hired for the next academic year. The school gave him no reasons for the decision and no opportunity to challenge it at a hearing. The applicable state statutes provided for one-year contracts of employment during a probationary period of up to four years; university rules provided that no reason need be given for nonretention of a nontenured teacher and no appeal right was provided; the contract of employment had a fixed termination date with no provision for reemployment. Roth alleged that the failure of university officials to give him notice of any reason for nonretention and an opportunity for a hearing violated his right to procedural due process. The United States Supreme Court disagreed, holding that the terms of Roth's employment secured no interest in reemployment for the next year and, hence, Roth had no property interest entitled to protection under the Due Process Clause. In its discussion of the nature of property interests, the Court stated:

". . . To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . ." *Board of Regents v. Roth, supra,* at 577.

Property interests are not created by the Constitution; they are created and defined by existing rules or mutually explicit understandings that stem from an independent source such as state laws, ordinances or an implied contract that secure certain benefits and support claims of entitlement to those benefits. *Bishop v. Wood,* 426 U.S. 341, 344 (1976) ; *Perry v. Sindermann,* 408 U.S. 593, 601 (1972) ; *Board of Regents v. Roth, supra,* at 577. The sufficiency of the claim of entitlement must be decided by reference to state law. *Bishop v. Wood, supra,* at 344.

The benefit to which Taplick claims to have been entitled is his certification as eligible for a certain position of public employment—the benefit of continued consideration for the job of Programmer III. The court of appeals concluded that this benefit was secured by the civil service ordinance which creates a mutually explicit understanding supporting Taplick's claim of entitlement to the benefit, thereby creating a property interest.

Sec. 3.35 (6) (c) provides nine specific grounds upon which the personnel director is entitled to exclude job applicants from further consideration for public employment as follows:

"The Personnel Director may refuse to examine the applicant, or after examination to certify as eligible, who is found to lack any of the preliminary requirements established for the examination for the position of employment for which he applies, or who is physically so disabled as to be rendered unfit for the performance of the duties of the position to which he seeks appointment, or who is addicted to the habitual use of intoxicating liquors

to excess or has been guilty of any crime or of infamous or notoriously disgraceful conduct, or who has been dismissed from the public service for delinquency or misconduct, or who has made a false statement of any material fact; or directly or indirectly shall give, pay or promise to give any money, service, or other valuable thing to any person for or on account of, or in connection with, his test, or appointment; or has practiced, or attempted to practice any deception or fraud in his application, in his certificate, in his examination or in securing his eligibility or appointment, or refuses to furnish testimony as required by law."

The court of appeals held that this ordinance requires the initial decision regarding eligibility for public employment to be made on the basis of the reasons stated in the ordinance and on no other basis. The ordinance

". . . thereby creates a 'legitimate expectation' in the applicant that if none of the stated reasons exist, as petitioner here claims, he will be secured a right to compete for a specific job on the same basis as other applicants who have not been screened out for the stated reasons . . . [T]his ordinance creates a 'clearly implied promise' that the applicant will not be excluded from further consideration without a specifically stated 'cause.' " *Taplick v. City of Madison Personnel Board, supra,* at 514.

We do not believe that the ordinance creates such a property interest. In *Bishop v. Wood, supra,* the petitioner was dismissed from his job as a policeman without a hearing. A city ordinance provided that a permanent city employee (as petitioner was classified) could be discharged if he failed to perform work up to the standard of his classification, or if he was negligent, inefficient or unfit to perform his duties. The petitioner claimed that the ordinance should have been read to prohibit discharge for any reason other than those specified and therefore to confer tenure on all permanent employees. The Supreme Court noted that the ordinance could

be read as conferring a guarantee of continued employment, but stated that the ordinance could also be construed "as granting no right to continued employment but merely conditioning an employee's removal on compliance with certain specified procedures." *Bishop v. Wood, supra,* at 345. A federal district court judge had construed the ordinance under state law to mean that the employee "held his position at the will and pleasure of the city." *Id.* at 345. The Supreme Court accepted this interpretation of the ordinance and held that the petitioner's discharge did not deprive him of a property interest protected by the Fourteenth Amendment.

In this case the ordinance sets forth nine grounds upon which the personnel director "may refuse" to certify a job applicant as eligible for the position. The ordinance does not create a right to be certified as eligible for a position in the absence of one of the stated reasons for ineligibility. It does not provide an entitlement to job certification subject to forfeiture if the applicant is found unfit for one of the reasons listed in the ordinance. The ordinance merely establishes administrative guidelines to be used by the personnel director in evaluating applicants for positions with the city. The certification of applicants is left entirely to the discretion of the personnel director. Thus, Taplick had no legitimate claim of entitlement to job certification. His interest in being considered for the job was in the nature of a unilateral expectation or abstract need or desire. *Board of Regents v. Roth, supra,* at 577.

The Due Process Clause does not limit an employer's power to consider the capabilities and competence of each applicant for a position and to make decisions accordingly. It stretches the concept of entitlement too far to suggest that a common council cannot create guidelines for evaluating job applicants without creating a property right of constitutional proportions in every non-city em-

ployee who might apply for a position and be rejected from consideration for the job for an unspecified reason. Therefore, we are of the opinion that the personnel director's decision not to certify Taplick did not deprive him of a property interest protected by the Fourteenth Amendment.

## LIBERTY INTEREST

We agree with the court of appeals that no liberty interest was implicated by the personnel director's action.

Liberty in an employment context is composed of two interests—a reputation interest and an employability interest. The reputation interest is infringed whenever a charge impugns one's good name, reputation, honor or integrity in such a way that it might seriously damage his standing and associations in the community. The employability interest is infringed when a stigma or other disability is imposed that would significantly undermine opportunities for future employment. *Board of Regents v. Roth, supra,* at 573; *Nufer v. Village Board of Village of Palmyra, supra,* at 297; *DH & SS v. State Personnel Board,* 84 Wis.2d 675, 687, 267 N.W.2d 644 (1978) ; *State ex rel. DeLuca v. Common Council,* 72 Wis.2d 672, 678, 679, 242 N.W.2d 689 (1976).

The nine grounds set forth in sec. 3.35 (6) (c) on which the personnel director may refuse to certify a job applicant fall into two categories. An applicant may be screened out if he is "found to lack any of the preliminary requirements" for the job and is thus unqualified. The remaining reasons for screen-out pertain to the applicant's physical and moral fitness for the job.

Taplick contends that he was qualified for the Programmer III position for which he applied, so the reason he was denied certification must be found in the second category of reasons set forth in the ordinance. Since

most of the criteria included in the second category relate to his reputation and integrity, he alleges that a decision not to certify him which may have been based on one of them affects his reputational liberty interest.

In *Board of Regents v. Roth, supra,* the Supreme Court held that the decision not to renew the teaching contract of a nontenured university professor did not affect his liberty interest where the reasons for that decision were not specified. In the instant case no reasons were given for the personnel director's decision not to certify Taplick. In fact, the rejection letter Taplick received stated that the decision was not an adverse reflection of his abilities and achievements. Thus, there was no suggestion whatever that Taplick's "good name, reputation, honor or integrity" was impaired.

In *Bishop v. Wood, supra,* the Supreme Court held that since the reasons for discharging a police officer were communicated to him, but were not made public, they did not impair his reputation. The court of appeals in this case, relying on *Bishop,* held that even if it were assumed that all of the criteria stated in sec. 3.35(6)(c) adversely affected Taplick's reputation, the decision was communicated privately, not publicly, and therefore there was no implication that his reputation in the community was damaged.

Taplick now contends that he could show that damaging reasons for the personnel director's decision were made public by a newspaper article which reported an interview with the city personnel technician who handled the applications for the position in question. The fact remains that no reasons were given for the decision and therefore Taplick's reputation in the community could not have been damaged.

■ All that clearly appears from the record is that Taplick was not certified as eligible for one job. It stretches

the concept too far to suggest that a person is deprived of "liberty" when he is simply not considered for one job but remains as free as before to apply for another. *Board of Regents v. Roth, supra,* at 575.

Since the personnel director's refusal to certify Taplick implicated no liberty interest and the ordinance accorded him no property interest, the procedural guarantees of the Due Process Clause do not apply.

*By the Court.*—The decision of the court of appeals is reversed.