## Fred W. FLETCHER, M.D., Plaintiff-Respondent-Cross Appellant,

v.

## EAGLE RIVER MEMORIAL HOSPITAL, INC., Defendant-Appellant-Cross Respondent. †

Court of Appeals

*No. 88–1111. Orally argued February 20, 1989.—Decided April 11, 1989.*

(Also reported in 441 N.W.2d 297.)

† Petition to review granted.

For defendant-appellant-cross respondent there were briefs and oral argument by *Nancy J. Krueger* of *Menn, Nelson, Sharratt, Teetaert & Beisenstein, Ltd.,* of Appleton.

For plaintiff-respondent-cross appellant there were briefs and oral argument by *Michael J. Stingl* of *Eckert Law Office,* of Rhinelander.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Eagle River Memorial Hospital, Inc., appeals a judgment in favor of Dr. Fred Fletcher pursuant to 42 U.S.C. sec. 1983. The hospital raises a number of issues, including whether the record contains any evidence to support a finding of state action, whether Dr. Fletcher had a property interest in his position on the hospital staff, and whether the trial court erred by awarding punitive damages against the hospital. Dr. Fletcher raises a damage issue in his cross-appeal. We conclude that the hospital waived the state action issue and additionally, made a judicial admission that its conduct toward Dr. Fletcher constituted state action. We also determine that Dr. Fletcher does have a property interest and is entitled to recover punitive damages from the hospital under sec. 1983. Therefore, we affirm.

The hospital granted Dr. Fletcher full staff privileges for consulting and admitting in cardiology and internal medicine in 1975. His privileges were renewed regularly, either annually or biannually, up until 1984. In 1981 he was named vice chief of staff, and from 1982 until September, 1983 he was the hospital's chief of staff.

In 1983, Dr. Fletcher requested a one-year leave of absence to take an educational sabbatical in Saudi Arabia. Then hospital administrator Charles Reevs and the board of directors granted the leave of absence. Dr. Fletcher left Eagle River in late September, 1983. While in Saudi Arabia, he corresponded several times with hospital officials, including Reevs. Meanwhile, Dr. Fletcher's staff privileges were scheduled to expire in October, 1984.

Upon his return to Eagle River in October, 1984, Dr. Fletcher wrote to the board chairman concerning reinstatement of his staff privileges. In a letter from the new

149

hospital administrator, Jerome Burdick, he was informed that he would have to apply as a new physician, i.e., that his prior eight years with the hospital would not entitle him to be treated differently from any other physician applying for the first time. Dr. Fletcher submitted his application for staff privileges in January, 1985, which is when the other physicians' reapplications were acted upon.

Both the medical staff credentials committee and the medical staff approved Dr. Fletcher's application. Contrary to hospital by-laws, his application was then reviewed by the personnel committee rather than the joint conference committee. That committee eventually recommended that Dr. Fletcher not be granted consulting privileges. Finally, in September, 1985, the hospital's board of directors voted to deny Dr. Fletcher's application. The only reason given him for the denial was a lack of need for a cardiologist, although the record discloses other reasons as well.

The hospital failed to notify Dr. Fletcher of the adverse decision or the grounds for the decision. Dr. Fletcher's attorney sent the hospital a letter indicating that he and Dr. Fletcher presumed that the hospital had denied Dr. Fletcher's application because they had not heard from the hospital. Dr. Fletcher requested a hearing on the board's action, but that request was denied. Dr. Fletcher then filed suit against the hospital alleging, among other things, that he had a property interest in consulting privileges, that the hospital deprived him of that property interest without due process of law, that the hospital breached its agreement to reinstate him upon his return, and that the hospital violated some of its own by-laws in its treatment of his application. However, Dr. Fletcher did not specifically plead sec. 1983 in his complaint.

After a two-day bench trial, the circuit court found that the hospital acted under color of state law for purposes of sec. 1983 and had improperly deprived Dr. Fletcher of a property right without first according him procedural due process protections. The court awarded Dr. Fletcher one dollar in compensatory damages and $50,000 in punitive damages under sec. 1983.

The first issue is whether the record is adequate to support the trial court's finding of "state action" pursuant to sec. 1983.[1] The hospital raises this issue for the first time on appeal. The hospital admitted in a pretrial brief that it was a quasi-public institution whose action is viewed as governmental action for due process purposes. The hospital did not contest the state action issue as a matter of trial strategy. Even after the trial, the hospital maintained its position in its post-trial brief: "Plaintiff can claim violation of due process rights only upon his successful assertion that the defendant is a public or quasi-public hospital. He has done so. However, governmental bodies are not liable for punitive damages." Instead, the hospital argued that Dr. Fletcher did not have a constitutionally protected property or liberty interest and that he could not recover punitive damages because of the hospital's quasi-public nature.

Based on this record and the hospital's course of conduct, the hospital is now bound by its admission. It

[1]Section 1983 provides in part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other person proceeding for redress.

conceded that its action was state action before the trial and after the trial but before the court had decided the issue. Such admissions may, in the discretion of the trial court, bind the party making them and provide an adequate evidentiary basis for the trial court's findings of fact. *American Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 226 (9th Cir. 1988); *Plastic Container Corp. v. Continental Plastics,* 607 F.2d 885, 906 (10th Cir. 1979).

The trial court did not abuse its discretion in concluding that the hospital's statement in its pretrial brief constituted a judicial admission. A judicial admission is a formal act of a party or its attorney in court, dispensing with the proof of a fact claimed to be true, and is used as a substitute for legal evidence at trial. *Kuzmic v. Kreutzmann,* 100 Wis. 2d 48, 51–52, 301 N.W.2d 266, 268 (Ct. App. 1980). To be binding, the admission must be one of fact, rather than a conclusion of law or an opinion, and must be clear, deliberate, and unequivocal. *Id.* The defendant's acknowledgment that the hospital is a quasi-public body for due process analysis meets each of these criteria. Statements made in a brief may constitute an admission. *American Title,* 861 F.2d at 227. It is evident from its statements that the hospital was admitting, for the purpose of this proceeding, that its conduct constituted state action. The trial court was entitled to rely on this admission.

Contrary to the dissent's characterization, the court's use of sec. 1983 did not come as a total surprise to both parties. Counsel for the hospital during oral argument admitted that the hospital had conceded the state action issue and was not surprised when the court made its decision based on sec. 1983. On appeal they argued that the statements in question did not constitute an admission or stipulation for evidentiary purposes, but

never suggested that no such concession was made or that it was not made in a sec. 1983 context.

Not only are the admissions made by the hospital adequate to support the trial court's findings of fact, but the hospital may not raise this issue for the first time on appeal. Because it acknowledged being a public entity for due process analysis at each stage of the trial proceedings, the hospital may not now raise this issue for the first time on appeal. The hospital has waived this issue and we will not address it. *Wirth v. Ehly,* 93 Wis. 2d 433, 443–44, 287 N.W.2d 140, 145–46 (1980).

The next issue is whether the record supports the trial court's finding that Dr. Fletcher had a constitutionally protected property interest in resuming his position on the hospital staff upon returning from his leave of absence. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. . .. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972). In *Perry v. Sindermann,* 408 U.S. 593 (1972), the court held that while a university professor's mere subjective expectation of reemployment is not a protected property interest, the alleged existence of rules and understandings promulgated and fostered by state officials might justify his claim of continued employment. The court also noted that proof of a property interest would not entitle him to reinstatement; it only meant that he was entitled to a hearing at which he could be informed of the grounds for his nonretention and challenge their sufficiency. *Id.* at 602. Property interests are not created by the constitution. They are created and defined by existing rules or mutual explicit understandings "that stem from an independent source

such as state laws, ordinances or an implied contract that secure certain benefits and support claims of entitlement to those benefits." *Taplick v. City of Madison Personnel Bd.*, 97 Wis. 2d 162, 170, 293 N.W.2d 173, 177 (1980).

We conclude that the record contains evidence of an agreement between the hospital and Dr. Fletcher that he would have a position at the hospital upon his return to Eagle River and that the trial court could have found a property interest based on this agreement. There is no doubt that Dr. Fletcher so expected. Evidence in the record supports the conclusion that at the time it granted the leave of absence, the hospital also expected Dr. Fletcher to return. Reevs and the board of directors granted Dr. Fletcher a leave of absence; implicit in this arrangement was the understanding that he would return to the hospital at the end of the one-year period. *See Reagan Outdoor Advertising, Inc. v. Lundgren,* 692 P.2d 776, 778 (Utah 1984). Furthermore, the arrangements Dr. Fletcher made to cover his cases while he was gone were of a temporary nature.

The next issue is whether punitive damages can be awarded against the hospital. The hospital argues that punitive damages are not allowed against a hospital for the same reasons they are not allowed against a municipality and that therefore the United States Supreme Court decision in *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247 (1981), controls. We disagree.

Punitive damages may be awarded to punish violations of constitutional rights. *Id.* at 267–68. they are intended to punish a wrongdoer whose wrongful conduct was intentional or malicious and to deter similar conduct in the future. *Id.* at 267. They may be awarded in a sec.

154

1983 action even though the plaintiff is not entitled to compensatory damages. *Sahagian v. Dickey,* 827 F.2d 90, 100 (7th Cir. 1987).

The policy reasons for not imposing punitive damages against a municipality do not exist where the defendant is a private hospital. If awarded against a municipality, a punitive damages award punishes only innocent taxpayers who did not take part in the constitutional violations. Such a result reduces the deterrent effect of a punitive damages award; the amount awarded will likely be paid for by an increase in taxes or a reduction in public services rather than by the municipality officials involved in the constitutional violations. *Fact Concerts,* 453 U.S. at 267–68. While this rationale has been applied to preclude a punitive damages award against a public, taxpayer-funded hospital system, *Davis v. West Community Hosp.,* 755 F.2d 455 (5th Cir. 1985), it does not apply where the hospital involved is private.

On his cross-appeal, Dr. Fletcher challenges the trial court's nominal damage award of one dollar. Compensatory damages are awarded to make whole an injured party suffering actual damage or loss. *White v. Benkowski,* 37 Wis. 2d 285, 290, 155 N.W.2d 74, 77 (1967). Where the only concern is with the vindication of legal rights, nominal damages are appropriate. *Diana Shooting Club v. Kohl,* 156 Wis. 257, 259, 145 N.W. 815, 816 (1914). Generally, whether a party has suffered a compensable economic loss and the dollar figure to be attributed to that loss is a factual determination; a reviewing court looks only at whether the award is within reasonable limits and is supported by the evidence. *Cords v. Anderson,* 80 Wis. 2d 525, 552–53, 259 N.W.2d 672, 685 (1977). The trial judge is in the best position to analyze

evidence and appraise the reasonableness of damages. *Ballard v. Lumbermans Mut. Cas. Co.,* 33 Wis. 2d 601, 606, 148 N.W.2d 65, 68 (1967).

Dr. Fletcher argues that the collateral source rule prohibits offsetting his Madison income against the income he would have earned had he remained at the hospital. We reject this argument. The collateral source rule provides that a claimant's recovery is not to be reduced by amounts received from other sources for his injuries, i.e., sources collateral to the defendant. *Lambert v. Wrensch,* 135 Wis. 2d 105, 110 n. 5, 399 N.W.2d 369, 372 n. 5 (1987). However, the income Dr. Fletcher received from his new position did not compensate him for past injuries but, rather, was in payment for new services he was providing. Therefore, the collateral source rule does not apply.

Dr. Fletcher also argues that he is entitled to recover his lost wages from October 20 until December 1 computed on the basis of his pre-leave income. The trial court noted that Dr. Fletcher had been winding down his practice before he left for Saudi Arabia. While recognizing that Dr. Fletcher suffered some injury in this regard, the trial court concluded that there was no evidence in the record from which to determine what Dr. Fletcher's income would have been during that relatively brief period. Based on the record, we cannot conclude that this conclusion was unreasonable.

Finally, Dr. Fletcher argues that he is entitled to recover $69,800 in travel and other out-of-pocket expenses involved with his employment in Madison. The trial court concluded that Dr. Fletcher could not recover these expenses because he was earning more at his pre-

sent position in Madison than he had been earning at the hospital. The record supports this conclusion. As the trial court noted, Dr. Fletcher did not suffer any economic loss as a result of the hospital's wrongful conduct. Therefore, the nominal compensatory damage award was appropriate.

*By the Court.*—Judgment affirmed.

CANE, P.J. (dissenting). The trial court concluded there was a sec. 1983 violation in spite of the fact that this action was never pled, suggested, argued, or proven. Under 42 U.S.C. sec. 1983, the hospital must act under color of law, and Dr. Fletcher must have been deprived of a constitutional right. *See Weber v. City of Cedarburg,* 129 Wis. 2d 57, 65, 384 N.W.2d 333, 338 (1986). Whether the hospital acted under color of law is a question of fact which in this case was for the trial court to decide. The evidence must demonstrate that there was a sufficiently close nexus between the governmental body and the challenged action of the hospital. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351 (1974).

Appellate courts have consistently held that there must be action that is in a government's capacity, for the government's direct benefit, or at the government's behest. *See Modaber v. Culpeper Mem. Hosp.,* 674 F.2d 1023, 1025 (4th Cir. 1982). In other words, action under color of law exists only when it can be said the governmental body is responsible for the specific conduct of which the plaintiff complains. *See Blum v. Yaretsky,* 457 U.S. 991, 1004 (1982). "The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." *Jackson,* 419 U.S. at 350.

Here, there was absolutely no evidence to substantiate a finding that the state of Wisconsin or any other governmental body played any part in the implementation of the procedures allowed by the board in denying hospital privileges to Dr. Fletcher, or that the government played a role in the decision to deny these privileges to Dr. Fletcher. At trial, Dr. Fletcher failed to present any evidence as to the financial structure of the hospital, its sources of funding, the degree of municipal, county, or state involvement in the hospital's daily affairs, or the degree of state regulation. In fact, from the trial court's decision, we still do not know what governmental body was allegedly involved for the hospital to be acting under color of law.

The majority opinion ignores this problem and permits the trial court's decision to rely on two statements made by the hospital in its pretrial brief. The first states: "This court has previously held in these proceedings that because of its receipt of Hill-Burton Funds and other community activities, this hospital should be regarded as a quasi-public institution. We agree with that holding." The other sentence relied upon by the trial court states: "For due process analysis, a quasi-public hospital's action is viewed as government action." This was not a stipulation or an admission of fact that it acted under color of law for the purposes of a sec. 1983 violation. *See* sec. 804.11, Stats., for admissions of fact.

Also, when viewed in the context of the proceedings and argument being made at the time, the hospital was merely conceding that it was not a private hospital whereby the holding in *Johnson v. City of Ripon,* 259 Wis. 84, 86, 47 N.W.2d 328, 330 (1951), applied. Earlier in its motion for summary judgment, the hospital moved for dismissal when it argued that it was a private hospi-

tal and, under the *Johnson* case, the medical staffing decisions were not subject to judicial review.

The trial court denied the motion, citing the fact that the hospital had received federal Hill-Burton Act funds and had involvement with other community activities. The trial court concluded that it was not therefore a "private" hospital. The hospital agreed, conceding that there can be judicial review of its staffing decisions. No more than that. It then proceeded to argue the merits of its staffing decision. Moreover, even if I were to accept this as an admission—which I do not—it falls far short of admitting that the hospital acted under color of law when denying Dr. Fletcher's application.

I think this is especially important when reviewing the record. The pleadings do not suggest a sec. 1983 action. The pretrial briefs do not suggest a sec. 1983 action. The trial testimony does not suggest a sec. 1983 action. There was no motion to amend the pleadings to conform to the proof even suggesting a sec. 1983 action. Finally, the post-trial briefs do not suggest a sec. 1983 action. Nor did Dr. Fletcher's argument for punitive damages rely on a sec. 1983 action.

Whether the hospital acted under color of law as part of a sec. 1983 action when denying Dr. Fletcher's application was never alleged, suggested, hinted, argued, or proven. The burden was on Dr. Fletcher to prove that the hospital's conduct in not renewing his hospital privileges was done under the color of law. The fact that the hospital received Hill-Burton Act funds and was subject to state regulation, without more, does not render the hospital's conduct as under color of law with respect to denying Dr. Fletcher's application for hospital privileges. *See Briscoe v. Bock,* 540 F.2d 392, 395–96 (8th Cir. 1976). For the very first time, a sec. 1983 action is mentioned in the trial court's decision. We see the trial court

literally searching for some theory upon which to base a recovery for Dr. Fletcher.

Conceding at the very most that the hospital's statements in its pretrial briefs may have misled Dr. Fletcher into not submitting proof on the color of law issue, I would conclude that the sec. 1983 action was not fully litigated. Because this crucial issue was never fully tried, I would reverse and remand this matter for a trial on only this issue pursuant to our discretionary power under sec. 752.35, Stats. If the court concludes that the hospital had not acted under color of law with respect to denying Dr. Fletcher's application as required under a sec. 1983 action, then it should also dismiss the complaint. If it concludes that the hospital had acted under color of law, then it should reinstate its judgment.