Fred W. FLETCHER, M.D., Plaintiff-Respondent-Cross Appellant,

v.

EAGLE RIVER MEMORIAL HOSPITAL, INC.,
Defendant-Appellant-Cross Respondent-Petitioner.

Supreme Court

*No. 88–1111. Argued January 25, 1990.—Decided June 26, 1990.*

(Also reported in 456 N.W.2d 788.)

For the defendant-appellant-cross respondent-petitioner there were briefs by *Nancy J. Krueger* and *Menn, Nelson, Sharratt, Teetaert and Beisenstein, Ltd.*, Appleton, and oral argument by *Ms. Krueger.*

For the plaintiff-respondent-cross appellant there were briefs by *Michael J. Stingl* and *Eckert Law Office,* Rhinelander and oral argument by *Mr. Stingl.*

HEFFERNAN, CHIEF JUSTICE. This is a review of a published court of appeals decision[1] which affirmed a judgment of the circuit court for Vilas county, James W. Karch, Circuit Judge for Florence and Forest counties, presiding, that concluded that Dr. Fred W. Fletcher could recover, under the aegis of 42 U.S.C. sec. 1983[2] one dollar in compensatory damages and $50,000 in punitive damages for the deprivation of a property right, a consultative staff position at the Eagle River Memorial Hospital, without first being accorded appropriate procedural due-process protections.

---

[1]*Fletcher v. Eagle River Memorial Hospital,* 150 Wis. 2d 145, 441 N.W.2d 297 (Ct. App., 1989).

[2]42 U.S.C. sec. 1983 provides in part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

We reverse under our discretionary authority set forth in sec. 751.06, Stats.,[3] on the ground that the real controversy has not been fully tried, and remand to the Vilas county circuit court for a new trial.

We conclude that the real controversy has not been tried, because the trial court relied upon "concessions" made by the defendant hospital to furnish the basis for concluding that the conduct of Eagle River Memorial Hospital was conduct under the "color" of state law. Both the trial court and the court of appeals erred, because a judicial admission or concession can help sustain the burden of one party or the other only when the admission is evidentiary and relating to a relevant fact. Here the concession was in respect to a matter of law which is binding upon neither the parties nor upon any court. Because the concession and its acceptance by the court led to the conclusion that questions of "state action" and under "color" of state law were not in issue, it appears to us that this crucial issue—whether the conduct of the hospital was state action conferring jurisdiction under 42 U.S.C. sec. 1983—was never addressed at trial.

The facts are these. Dr. Fred Fletcher was a board-certified cardiologist. In 1975, he was granted full staff

[3]Section 751.06, Stats., provides as follows:

**751.06 Discretionary reversal.** In an appeal in the supreme court, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record, and may direct the entry of the proper judgment or remit the case to the trial court for the entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

privileges at Eagle River Memorial Hospital for consulting and admitting in cardiology and internal medicine. His staff privileges were renewed until 1984. In 1982, he was named the hospital's chief of staff.

In July of 1983, he requested a one-year leave of absence to take an educational sabbatical in Saudi Arabia. He was informed in September 1983 by letter signed by the then administrator of the hospital, Charles E. Reevs, that the requested leave of absence had been approved by the hospital's board of directors. Dr. Fletcher arranged for a Wausau cardiologist to "cover" his patients during the leave period. That physician understood that the agreement was to continue only until Fletcher's return. Fletcher agreed to turn over his patient records for access by the covering physician. Fletcher understood that he would be able to resume staff privileges after his return from Saudi Arabia at the end of the year. During Fletcher's absence, Hospital Administrator Reevs retired and was replaced by Jerome Burdick.

Dr. Fletcher's staff privileges, from which he had taken a leave of absence, expired on October 1, 1984. He did not return to Eagle River until October of 1984. Upon requesting reactivation of his staff privileges on October 20, 1984, Dr. Fletcher was told by the new administrator that the leave was in violation of the hospital's bylaws, that his appointment had expired, and that he would have to apply for staff privileges as an initial applicant. He applied for staff privileges on January 27, 1985. The medical staff and the credentials committee approved the application. Despite the unanimous approval of the application by the medical staff, at Burdick's direction the application was sent to the governing board, which rejected the application by a six-to-one vote, concluding that there was no "need" for

another cardiologist or internal medicine physician on the staff.[4] Dr. Fletcher was not told of the rejection until his attorney asked for that information. His request for a hearing was not granted. Dr. Fletcher succeeded in getting other employment as a medical administrator in Madison.

On November 12, 1985, Dr. Fletcher commenced an action against the hospital to enjoin the nonrenewal of his staff privileges, to recover damages for loss of profits, and damages for the denial of property rights, *i.e.*, the denial of staff rights without a hearing, which he alleged was required by constitutional due process of law.

Consistent with its interpretation of the hospital rules and bylaws, the hospital denied that Dr. Fletcher had ever been on leave and alleged that Eagle River Memorial Hospital was a private hospital, whose application procedures and staffing decisions were not subject to judicial review or subject to due-process requirements under *Johnson v. City of Ripon*, 259 Wis. 84, 86, 47 N.W.2d 328 (1951).

There is no specific reference in either the complaint or the answer that the action was brought under 42 U.S.C. sec. 1983.

Eagle River Memorial Hospital moved for summary judgment, asserting that no facts had been stated upon which relief could be granted, because Eagle River

---

[4]A tape of the meeting of the governing board indicates that "need" was a pretext for refusing to reinstate Dr. Fletcher. As Judge Karch stated, the tape revealed animosity toward Dr. Fletcher, that, in the view of Burdick, he had used the resources of the hospital unwisely, that Burdick also criticized Dr. Fletcher's personal life. After these "real" reasons were discussed, a majority of the board decided to go on record to base their decision on the stated reason that there was no "need" for a staff cardiologist.

Memorial Hospital was a private hospital, whose staffing decisions were not subject to judicial review. Additionally, defendant hospital stated that no facts were at issue or which showed that the decision of Eagle River Memorial Hospital was arbitrary or capricious. Despite vigorous argument that Eagle River Memorial Hospital was a private hospital, the trial court did not address this question on summary judgment, but did conclude in its order and opinion that there were factual matters that needed resolution and that the complaint *prima facie* stated a claim on which relief can be granted.

Interestingly enough, the subsequent statements or admissions by the defendant that the hospital is acknowledged to be quasi-public and, therefore, its action was state action purports to be founded on the court's summary judgment decision to that effect. No decision to that effect was made on summary judgment. The most that can be said is the court permitted the action to proceed. The court in its order denying summary judgment was silent about the hospital being quasi-public. Summary judgment was denied only because there were issues of fact.[5]

The case then went to trial before the court. In making its decision after two days of trial, the circuit court did not rely upon any evidence that was produced at trial in finding that the hospital had acted under color of state law in violation of 42 U.S.C. sec. 1983. Instead, in the opinion at the close of the trial, it relied wholly upon statements in defendant's briefs filed in the course of trial. The judge stated:

> The defendant is a quasi-public institution whose action is viewed as governmental action for

[5]The summary judgment documents do reveal that the hospital received Hill-Burton funding from the federal government.

due process purposes. The defendant has so conceded on pages three and 22 of its pre-trial submission entitled "Defendant's Initial Trial Brief" dated July 13, 1987, and the case has been tried and submitted on that basis.

The concession in the briefs appears to be the only crutch on which the trial court's decision rests—that the conduct of the hospital was governmental action, a jurisdictional requirement for a sec. 1983 action. It is also the only underpinning of the court of appeals decision. The linchpin of the reasoning of both the trial court and the court of appeals was the alleged admission by the hospital in its pretrial brief that it was a quasi-public institution, whose action would be viewed as governmental action for due-process purposes. If this linchpin is defective or irrelevant, it is apparent that neither the decision of the circuit court nor of the court of appeals is well founded.

Having concluded that the conduct of the hospital was governmental action, the circuit court held that there was a violation of the rights guaranteed under 42 U.S.C. sec. 1983, because Dr. Fletcher had a constitutionally protected property interest in reinstatement and was therefore entitled to a due-process hearing, which had been denied. It found originally that there were no compensatory damages owing, because Dr. Fletcher had secured other employment which fully mitigated his pecuniary loss. The court awarded $50,000 as punitive damages. The trial court later amended its decision to find one dollar as compensatory damages. This was allegedly in response to the argument that, under Wisconsin law, there can be no punitive damages in the absence of compensatory damages. *Hanson v. Valdivia,* 51 Wis. 2d 466, 474, 187 N.W.2d 151 (1971), and *Tucker v. Marcus,* 142 Wis. 2d 425, 418 N.W.2d 818 (1988). The

judge pointed out, however, that such ought not be the rule where the only reason compensatory damages were not awarded was due to mitigatory efforts solely attributable to the plaintiff.[6] Reinstatement or direction to hold a hearing was not ordered.

The circuit court's judgment was appealed to the court of appeals. The majority of the court of appeals treated the case as one brought under sec. 1983, although a sec. 1983 action was never specifically pleaded. As stated above, it determined, as did the trial court, the question of state action solely on the basis of what it referred to as defendant's "judicial admissions."[7]

On the merits, the trial court concluded that Dr. Fletcher had a constitutionally protected property interest in his job, because he realistically and reasonably could have "expected" reinstatement upon his return from Saudi Arabia and that he was entitled to a hearing upon denial of his request for staff privileges.

Our review of the record and of the opinions of both the circuit court and the court of appeals leads us to the conclusion that the decision that the hospital's conduct was "governmental action" "under color of law" was reached by the circuit court on a legally impermissible jurisprudential basis, thereby resulting in not trying that

---

[6]We do not address this aside by the trial judge, for it was clearly dictum in his decision and was not the stated rationale for the award of punitive damages.

[7]Although it used these "judicial admissions" to establish the governmental nature of the action of Eagle River Memorial Hospital, when confronted with the question of punitive damages, it concluded that the punitive-damage remedy of 42 U.S.C. sec. 1983 was appropriate, because Eagle River Memorial Hospital was a private organization and not a governmental one immune from punitive damages.

issue at all. It is for this reason we reverse under sec. 751.06, Stats., and remand for a new trial.

The circuit court and the court of appeals made their determinations in the belief that defendant's admission constituted irrefutable proof that the conduct of the hospital in not reinstating Dr. Fletcher was under color of state law.

Assuming for the moment the subject matter of the concessions was appropriate for a judicial admission, we first address the question of whether the trial court exercised discretion in reaching the conclusion that the defendant hospital had indeed made any admission that was binding, *i.e.,* did the trial court abuse its discretion in that respect. We conclude that it did.

Counsel for the hospital, relying upon *Harrison Construction Co. v. Ohio Turnpike Commission,* 316 F.2d 174, 177 (6th Cir. 1963), correctly asserts that, because of the binding effect of judicial admissions, "opportunity is usually afforded counsel to explain and qualify such statements . . . before conclusive action is taken on the strength thereof."

As counsel for the hospital pointed out, judicial admissions must be clear, deliberate, and unequivocal. Moreover, they must be germane and pertinent to the very issue for which the court wishes to make use of the admissions. They should not be applied to one issue when it is unclear whether the party making the admission intended to address another issue.[8]

---

[8]In the instant case the first statement of hospital's counsel merely appeared to be an acknowledgment that the court had decided that judicial review of the staffing decisions was appropriate, not a concession that all or any of the conduct was "state" action as contemplated in 42 U.S.C. sec. 1983.

9 Wigmore, *Evidence,* sec. 2588 *et seq.* (Chadbourne rev. 1981), describes in detail the theory and nature of judicial admissions. Wigmore, in writing about judicial admissions, states:

§ 2588.   Theory of judicial admissions. An express waiver made in court or preparatory to trial by the party or his attorney conceding for the purposes of the trial the truth of some alleged fact, has the effect of a confessory pleading, in that the fact is thereafter to be taken for granted; so that the one party need offer no evidence to prove it and the other is not allowed to disprove it. This is what is commonly termed a solemn—i.e., ceremonial or formal—or *judicial admission* or *stipulation.* It is, in truth, a substitute for evidence, in that it does away with the need for evidence.

§ 2590.   Effect of judicial admissions: (1) Conclusive upon the party making. The vital feature of a judicial admission is universally conceded to be its *conclusiveness* upon the party making it, i.e., the prohibition of any further dispute of the fact by him and of any use of evidence to disprove or contradict it. In view, however, of the commendable purpose which leads (or ought to lead) to the voluntary making of admissions, it is always said—and properly so—that the trial court has discretion to avoid the consequence of conclusiveness of an admission:

§ 2591.   Effect of judicial admissions: (2) Prohibitive of evidence by the party benefiting. A fact that is judicially admitted *needs* no evidence from the party benefiting by the admission. But his evidence, if he chooses to offer it, *may* even be *excluded;* first, because it is now as immaterial to the issues as though the pleadings had marked it out of the controversy (§§ *supra);* next, because it may be superfluous and merely cumber the trial (§§ 1863, 1904 *supra);* and furthermore, because the added dra-

matic force which might sometimes be gained from the examination of a witness to the fact (a force, indeed, which the admission is often designed especially to obviate) is not a thing which the party can be said to be always entitled to.

Nevertheless, a colorless admission by the opponent may sometimes have the effect of depriving the party of the legitimate *moral force of his evidence;* furthermore, a judicial admission may be cleverly made with grudging limitations or evasions or insinuations (especially in criminal cases), so as to be technically but not practically a waiver of proof. Hence, there should be no absolute rule on the subject; and the trial court's discretion should determine whether a particular admission is so plenary as to render the first party's evidence wholly needless under the circumstances. [Footnotes omitted.]

§ 2594. **Form of the admission: Who is authorized.** (1) It is sometimes declared, in statute, court rule, or decision, that all agreements between attorneys or counsel, including presumably judicial admissions, *must be in writing* in order to obtain enforcement from the courts. No doubt, for admissions made *out of court,* or at least prior to trial and out of court, the rigid policy of the law should look only at written admissions, even though professional honor could not suffer such a distinction. But that policy need not apply to admissions *made in court* where the memory of the judge and the presence of other members of the bar could be trusted for verification in case of misunderstanding.

(2) It is of the nature of an admission, plainly, that it be by intention an act of waiver relating to the opponent's proof of the fact and not merely a statement of assertion or concession made for some independent purpose. But an admission made in the counsel's *statement of the case* may be treated as binding.

(3)  Judicial admissions are usually made by the party's *attorney or counsel.* It is settled that the general authority to conduct the trial implies the authority to make such admissions. [Footnotes omitted.]

A judicial admission is conclusive on the party making it. Once made it not only forecloses the admitter from contradicting the admission, but also may foreclose the opposing party from offering additional supporting or explanatory evidence, for such evidence by reason of the admission is immaterial surplusage. Thus, as Wigmore points out (sec. 2591), both parties may be substantially limited in their right to produce facts once the court recognizes a judicial admission. Wigmore recognizes that whether to treat a statement or purported concession as a judicial admission rests in the sound discretion of the court. *See* Wigmore, secs. 2590, 2591.

Under Wisconsin law, discretion must be demonstrably exercised by the trial court or it will be deemed an abuse of discretion. *McCleary v. State,* 49 Wis. 2d 263, 182 N.W.2d 512 (1971).[9]

Here the record reveals a clear abuse of discretion, for the record is devoid of the searching inquiry that a court is required to make before it reaches the conclusion that a party has voluntarily foregone the opportunity to prove or to contest a critical factual element of the lawsuit. Thus, even were the cursory and unexplained statements in briefs a proper subject for judicial admission, there was a clear failure to exercise appropriate discre-

---

[9]While it is incumbent on an appellate court to sustain a trial court's discretion, it can only do so if all the facts and circumstances are available to the appellate court, a situation not present here.

tion. For that reason alone the "admissions" were improper.

In the context of this case, however, the statements used by the court to conclude that the hospital's conduct was "under color of state law" or "governmental action" are not the stuff of which judicial admissions are made—matters of fact and evidence—but rather are conclusions of law. Conclusions of law may not be reached by the process of judicial admissions.

The leading Wisconsin case on judicial admissions is one decided by the court of appeals in 1980—*Kuzmic v. Kreutzmann,* 100 Wis. 2d 48, 51–52, 301 N.W.2d 266 (Ct. App. 1980). The court of appeals in this case, however, failed to follow its own precedent, although it stated it correctly at 150 Wis. 2d 145, 152. Therein, relying on *Kuzmic,* it stated:

> A judicial admission is a formal act of a party or its attorney in court, dispensing with the proof of a *fact* claimed to be true, and is used as a substitute for legal *evidence* at trial . . . .. To be binding, the admission must be one of *fact,* rather than a conclusion of law . . . .. It is evident from its statements that the hospital was admitting, for the purpose of this proceeding, that its conduct constituted state action. [Emphasis supplied.]

It is thus clear that the court of appeals viewed the two statements appearing in the briefs of hospital's counsel as admissions of fact—waiver of the opposing party's obligation to go forward with the evidence.[10] If

[10]The two statements relied upon are to be found in the pretrial brief filed after the disposition of the motion for summary judgment, which did not, despite the language to the contrary in defendant's brief, determine that the hospital was quasi-public, but only determined that factual issues remained that had to be tried:

178

the court of appeals was wrong in believing that what constitutes "state action" or "governmental action" under 42 U.S.C. sec. 1983 is a question of fact, it is apparent that there has been a failure of the legal process whereby it is reserved to judges and courts to make decisions of law and not for lawyers to do so.

The hospital's post-argument brief filed in this court quoting *City of Okmulgee v. Wall,* 167 P.2d 44, 46, 196 Okl. 536 (1946), correctly states that a party should not be bound by any misunderstanding or misapprehension of the law:

> This rule [in respect to judicial admissions], however, is limited to statements or admissions as to matters of fact. Statements or admissions relative to questions of law are not admissible . . . for the reason that a party should not be affected by a statement which may be attributable to a misapprehension of his legal rights.

Hence, legal concessions, *i.e.,* what is the applicable conclusion of law, is for the judiciary.

Wisconsin has long followed the same rule. In *Boettger v. City of Two Rivers,* 157 Wis. 20, 144 N.W. 1097, 147 N.W. 66 (1914), counsel for the City of Two Rivers in a brief filed in the circuit court conceded that the property assessment in question could not be made under a particular statute. Although this court in reviewing the matter did not expressly state the fact-law

---

This court has previously held in these proceedings that because of its receipt of Hill Burton Funds and other community activities, this hospital should be regarded as a quasi-public institution. We agree with that holding.

Subsequently in the same brief, counsel wrote:

For due process analysis a quasi-public hospital's action is viewed as government action.

179

dichotomy of judicial admissions, it held that counsel was not foreclosed on appeal from taking a different position, because the question was a matter of law governed by the particular statute. It stated:

> If the case made was a proper one in which to order a reassessment, the statute requiring such an order to be made is mandatory, and we do not think the appellant should be concluded by the position taken in its brief before the circuit court.

157 Wis. 60 at 67.

We believe the same basic jurisprudential rationale applies here. If the question of whether a party is acting "under color of state law" is a question of law to be decided by courts, it would be intolerable to foreclose the rights of parties by permitting their counsel to make declarations of law that would bind the courts, or counsel subsequently, to the possible detriment of their clients or to the detriment of the legal process. That is the effect of what happened here if the statements appearing in the briefs are treated as judicial admissions.

First of all, it is clear that the trial court never pondered, or even considered, any of the matters brought out at trial in making the determination of "state action." Judge Karch disposed of this vital—indeed controlling—issue, not on the basis of his own analysis of the civil rights statute as applied to the facts, but on the basis of counsel's statement alone. The entire issue was decided in the following words at the beginning of the trial court's decision:

> The defendant is a quasi-public institution whose action is viewed as governmental action for due process purposes. The defendant has so conceded on pages three and 22 of its pre-trial submission . . .

180

and the case has been tried and submitted on that basis.

Clearly, this question of law has not been tried. That it is a question of law seems clear.

■

The words, "state action" and "under color of state law," are derived from the fourteenth amendment and from the federal statute, 42 U.S.C. sec. 1983. *See Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 349–350 (1974), and 42 U.S.C. sec. 1983. Thus, the question—whether under the given facts the conduct of the party fits the statutory proscription "under color of state law"—is one of statutory interpretation. *Polk County v. Dodson,* 454 U.S. 312, 317–318, 326 (1981). This is a question of law and, as such, must initially be determined by the trial court, whose determination in that respect is owed no deference by the court of appeals or, in turn, by this court. It would indeed be strange were we to be foreclosed by counsel's interpretation of the law, but not by the interpretations of skilled judges.

Practice in the courts bears out this proposition. Whether conduct is under color of state law is reexamined at every level of decision-making. To take a typical case, in *Rendell-Baker v. Kohn,* 475 U.S. 830 (1982), the United States District Court concluded that a school counselor had been discharged by a school district acting under color of state law.[11]

On appeal the United States Court of Appeals reached the opposite conclusion, holding that the conduct was not "under color of state law." At the Supreme

---

[11] It should be noted that several actions were brought at the trial court level. Some of these decisions conflicted with others. They were, however, consolidated at the Court of Appeals level. *See* Syllabus headnote, 475 U.S. at 830.

Court level, the question was reviewed *ab initio,* deferring not at all to the prior court decisions. Had this been a factual matter, deference would have been compelled.

Likewise, in *Polk County v. Dodson,* 454 U.S. 312 (1981), the United States Supreme Court dismissed the petitioner's complaint in a sec. 1983 action, on the pleadings, because it concluded as a matter of law that a public defender does not act "under color of state law" when representing an indigent defendant in a state criminal proceeding. *See also Jackson v. Metropolitan Edison Co.,* 419 U.S. 345 (1974); *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 723 (1961); and *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 172 (1972).

It is clear that the question—is the conduct "under color of state law"—is a matter of law that cannot be bargained away by counsel nor shielded from *ab initio* consideration by successive court reviews.

We accordingly conclude that the "judicial admission" was a nullity and, because it was treated as dispositive by the trial court, the issue of "under color of state law" was never adequately tried or decided by the trial court.

We conclude this fact in itself requires reversal, for, in the absence of the admission by the defendant, the plaintiff might well have been impelled to produce additional facts and arguments upon which the legal conclusion of state action or not could be based. As counsel for plaintiff pointed out in oral argument, the "concession" of state action by the defendant had the effect of limiting the factual proof that might have been addressed in a straight breach-of-contract action brought under state law.

Because we reverse and remand for a new trial, giving the opportunity for the parties to replead on any

182

theory appropriate to the facts alleged, it is difficult to set guidelines for the new trial.

It was pointed out in the briefs and at oral argument that the pleadings never referred to an action under sec. 1983. Present counsel continue to be vague as to the exact nature of the action originally intended. Arguably, under the facts as alleged, the action could be one for straight breach of an employment contract under Wisconsin law; it could be for the deprivation of a property right under the fourteenth amendment; or it could be a cause of action specifically relying on 42 U.S.C. sec. 1983.[12]

The trial judge in his decision treated the action as being brought under sec. 1983. Despite the fact there was no reference to sec. 1983 in the pleadings, there was no amendment to the pleadings to conform to the proof of what the judge considered to be a sec. 1983 action. The nature of the action which may be brought on remand under sec. 751.06, Stats., need only be consistent with whatever facts are alleged at the option of the plaintiff.

To the extent that, on remand, conduct under color of state law is the gravamen of the action, we commend to the parties the words of the dissenter in the Wisconsin Court of Appeals, 150 Wis. 2d at 157 ff., that there must be a "sufficiently close nexus between the governmental body and the challenged action of the hospital." The dissent in this respect places primary reliance on *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345 (1974). The dissenter also suggests, citing *Briscoe v. Bock,* 540 F.2d 392, 395–99 (8th Cir. 1979), that:

---

[12]*Rendell-Baker v. Kohn, supra* at 837, points out that the ultimate issue in determining whether a person is subject to suit under sec. 1983 is the same question posed in cases arising under the Fourteenth Amendment: Is the alleged infringement of rights fairly attributable to the state?

The fact that the hospital received Hill-Burton Act funds and was subject to state regulation, without more, does not render the hospital's conduct as under color of law with respect to denying Dr. Fletcher's application for hospital privileges.[13]

We also note that, where property rights are allegedly denied by due-process violation, the Supreme Court in *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972), points out that more than an "expectation" of tenure is required—that there must be evidence of "entitlement" to the right asserted. The findings of the circuit court in the instant case, framed in terms of an expectation, were insufficient.

The trial judge awarded nominal compensatory damages of one dollar, but awarded $50,000 as punitive damages. Because we reverse the decision of the court of appeals and remand, we do not deal with the appropriateness of punitive damages in the case as originally tried.

Nor do we deal herein with the question of whether, assuming a proved sec. 1983 violation, the federal law preempts the state law in respect to damages.

Nor do we deal with the question of whether the hospital is immune from punitive damages, because it is asserted, after trial, that the hospital is a municipal entity. There has been no proof that whatever immunity attaches to municipal governments ought to attach to the Eagle River Memorial Hospital in respect to punitive damages. There has been no proof or finding that the

---

[13]*See also Rendell-Baker v. Kohn,* 457 U.S. 830 (1982), which stresses that substantial federal financing and regulation of a private school does not establish state domination or a sufficient nexus to find "state action" or "color of state law" in respect to discharge of employees.

Eagle River Memorial Hospital is a municipal governmental body.

We conclude that, because of the erroneous reliance by the circuit court on what the court of appeals referred to as judicial admissions, the real issue of whether the hospital's conduct was under color of state law was never tried. In fact, even the nature of the action was obscured. We therefore reverse and remand to the circuit court for a new trial, with the option, as provided by sec. 751.06, Stats., for both parties to replead.

*By the Court.*—Decision reversed and cause remanded to the circuit court.