NUFER, Appellant, v. VILLAGE BOARD OF VILLAGE OF
PALMYRA, Respondents.

Supreme Court

*No. 77-064. Submitted on briefs October 10, 1979.—*
*Decided November 6, 1979.*
(Also reported in 284 N.W.2d 649.)

For the appellant the cause was submitted on the briefs of *Christopher J. Rogers* and *Smith, Rogers & Smith* of Fort Atkinson.

For the respondents the cause was submitted on the brief of *David C. Williams* and *Dempsey & Harrison Law Office* of Elkhorn.

WILLIAM G. CALLOW, J.   This is an appeal from a judgment affirming the decision of the Palmyra Village Board (Board) removing Ronald Nufer (Nufer) from his position as village police chief.

Nufer had been Chief of Police for ten and one-half years. By resolution dated October 18, 1976, the Fire and Police Committee of the Village of Palmyra referred charges against Nufer to the full seven-member Village Board for hearing. The full Board passed a resolution scheduling a formal hearing on the charges.[1] Notice of the charges and date for hearing were sent to Nufer.

The following charges were preferred against Nufer:

"1. That Chief Nufer engaged in the business of selling eggs while on duty, in uniform, and with the police vehicle. That Chief Nufer stored eggs on a weekly basis in the Palmyra Police Department squad room from approximately the last half of 1973 through the year 1974. That in the same period of time Chief Nufer was observed delivering eggs while on duty, in uniform, and with the police vehicle on five occasions to the Donald McComb residence and on one occasion each to the Palmyra Junior High School and the Palmyra State Bank.

"2. That Chief Nufer on two occasions in the fall of 1972 engaged in grocery shopping at the People's Market in Jefferson while on duty, in uniform, and with the police vehicle.

"3. That Chief Nufer failed to acquaint his officers with the Rules and Regulations adopted by the Village Board for the Police Department from the date of adoption of said rules on December 15, 1975 to the present. That Chief Nufer told Officer Balk to disregard the Rules and Regulations approximately one day after adoption and so told Officer McComb approximately one week

[1] In villages having a population of 5,000 or more, matters pertaining to "appointments, promotions, suspensions, removals, dismissals . . . shall be administered, regulated and otherwise governed by s. 62.13, insofar as that section pertains to cities of the 2nd or 3rd class." Sec. 61.65(1), Stats. Sec. 62.13(5)(a) to (i), govern disciplinary actions and are expressly made applicable to proceedings against chiefs by sec. 62.13(5)(j). Although the Village of Palmyra had a population of less than 1,500 at the time of these proceedings and thus is not specifically covered by sec. 62.13(5), the Board complied with these provisions.

after adoption. That said conduct violates Rule I, Section 9 and Rule IV, Section 2 of the Rules and Regulations.

"4. That Chief Nufer while on duty expended large amounts of time on matters other than police business in violation of Rule II, Sections 22 and 23 and Rule IV, Section 52, more specifically as follows:

"(a) from 1973 to the present at the Edge of Town Restaurant, the Leo Houk residence, the L and L Service Station and the Iva and Leona Jones residence.

"(b) in the fall of 1975 at the home of Vicki Wilson

"(c) in February—April of 1973 at the George Fuller residence

"5. That Chief Nufer from December 15, 1975 to the present has failed to keep an accurate record of the mileage as well as conditions of equipment of the police vehicle and has failed to enforce such requirements on his officers, as required by Rule III, Section 27 of the Police Rules and Regulations.

"6. That Chief Nufer has accepted free coffee and meals at greatly reduced prices at the Edge of Town Restaurant on a regular basis from 1973 to the present.

"7. That Chief Nufer has failed to properly and timely prosecute 65 five-day tickets and 51 parking tickets, thus resulting in loss of revenue to the Village. Copies of said tickets are annexed.

"8. In February of 1975 the Village President requested Chief Nufer to keep confidential their conversation regarding the reprimand of Officer Balk. On the following day details of that conversation were repeated at the Palmyra Standard Station.

"9. That Chief Nufer on two occasions in the fall of 1975 under the guise of his official duty drove his son to Palmyra High School football games to avoid payment of the admission fee.

"10. That on February 17, 1972, Chief Nufer engaged in reckless driving while transporting a patient to Fort Atkinson Memorial Hospital.

"11. That in spring of 1976, Chief Nufer addressed a Kiwanis Club meeting held at the Kettle Country Inn in Palmyra concerning the work of the Police Department without authority from the Village Board in violation of Rule IV, Section 24.

"12. That from December 15, 1975 to the present Chief Nufer has failed to check his officers at odd hours to determine if they were attending to duty, as required by Rule I, Section 6.

"13. That on March 19, 1967 Chief Nufer and Officer McComb were at the Messier home in Palmyra questioning Pike Messier concerning a hit and run accident. When members of the Messier family acted in a threatening manner toward Officer McComb, Chief Nufer suddenly left the premises, leaving Officer McComb in a position of extreme peril.

14. That in September, 1975, Chief Nufer investigated an altercation between Officer Balk and Gerald Bies. That in the summer of 1975 Chief Nufer investigated an altercation between Officer McComb and Dennis Beaver. That both of these investigations were requested by the Village Board, but Chief Nufer did not in either case question his officers about their version of the incident. That in September, 1976, in the Palmyra Municipal Court Chief Nufer criticized the arrests by Officer Balk of several defendants under the loitering ordinance in the presence of the defendants, without first discussing the matter with Officer Balk. That said incidents undermined the authority of his officers.

"15. That on June 5, 1974 Chief Nufer attempted to enter the Edge of Town Restaurant with a sawed-off shotgun to arrest an unarmed juvenile but was prevented from doing so only by his inability to operate the gun release. That said incident indicates a lack of good judgment inasmuch as Chief Nufer was armed with a standard police revolver and the use of the shotgun would have injured other customers in the restaurant.

"16. That Chief Nufer has shown a lack of initiative, leadership and direction in the following respects:

"(a) in 1973 Chief Nufer refused to issue a citation upon the complaint of Betty Nelson that an individual had inflicted upon her injuries requiring 41 stitches despite the fact the Palmyra Police Department had received 72 similar complaints against him in the last three years.

"(b) that throughout his tenure as police chief he has failed to instruct his officers in matters of police procedure and substantive law."

The notice of charges, in addition to specifying the place, date, and time of the hearing, also informed Nufer as follows:

"You may be represented by counsel of your choice at said hearing, you may be present at said hearing, you or your attorney may confront and cross-examine witnesses against you, and you may present witnesses or other evidence on your behalf. At your request or that of your attorney, subpoenas will be issued by the Village Board on your behalf. If you or your attorney have further questions regarding said hearing you may contact the Village Attorney's Office."

Before the hearing Nufer commenced an action seeking declaratory relief in the circuit court for Jefferson County. Nufer requested the circuit court to declare the Board proceedings unconstitutional and "[t]o appoint an impartial and detached panel to hear and decide the charges against the plaintiff." Nufer also moved the court for an order restraining the Board from holding the planned hearing on December 13 and naming "a neutral and detached decision-making body, no member of which has engaged in the investigation of the charges or has in any way shown himself to be biased toward petitioner concerning said charges." Nufer filed affidavits executed by area residents supporting his claim that two Board members had made statements which indicated they had prejudged the case of removal filed against Nufer. Those Board members filed counter-affidavits denying that they had expressed prejudgment and contending that their statements related their intent to vote to bring charges, and not an intent to vote to remove Nufer.

The court denied Nufer's request for a temporary restraining order, stating it was "without power to designate a neutral and detached fact-finder other than the Village Board itself. The Village Board by statute

and by village organization is constituted as the proper forum; there is no alternate." The court noted that Nufer would have the protection of judicial review and the opportunity to make a complete record, but stated "[t]here is no showing in the record at this time, however, that a fair and impartial hearing by unbiased Village Board members will not take place on December 17th."

The public hearing on the charges was held before the Village Board on December 17, 18, and 28, 1976. At the hearing, the attorney for the Board conducted a voir dire of the Village Board questioning each Board member concerning the member's ability to fairly and impartially consider the evidence and base deliberations on that evidence. Each Board member answered that he felt able to fairly and impartially hear all the evidence. Nufer's attorney did not conduct a voir dire of the Board.

The prosecution produced several witnesses whose testimony gave support to the charges against Nufer. Nufer presented witnesses whose testimony refuted the charges. Nufer also produced six witnesses who testified to statements made by three members of the Board indicating they were predisposed to discharge Nufer before the hearing began.

At the close of testimony, the prosecuting attorney addressed the testimony which suggested that three of the seven board members had prejudged the charges against Nufer. He stated: "I ask you all to examine yourselves, and if any of you feel that you should not sit in the decision making session of this board, then I think you should make it known."

After deliberating in closed session, the Board determined that charges 1, 2, 3, 4, 7, 8, 13, 15, 16, and part of 14 had been proven to be true. By a majority vote, the Board removed Nufer from office as Chief of Police, effective December 31, 1976.

Nufer petitioned the circuit court for Jefferson County for a writ of certiorari. The petition was granted. In the circuit court, Nufer contended the Board's order was arbitrary, capricious, and unreasonable as contrary to the great weight of the evidence. Nufer also contended the Board erred in view of a record showing that at least three of the seven Board members were biased against Nufer and had predetermined the case prior to hearing the evidence.

The circuit court affirmed the findings of the Board and the Board's discharge action. The court specifically found that the Board's findings as to the charges against Nufer were sustained by evidence in the record with the exception of the fourth charge and part of the fourteenth charge. The court also found the Board could reasonably conclude that its findings constituted cause for dismissal. The circuit court then addressed and rejected Nufer's claim that at least three Board members were biased against him and predetermined the matter prior to the hearing. Judgment affirming the Board's decision was entered on April 28, 1977. We affirm.

The principal issue on this appeal is whether the proceedings against Nufer implicate a liberty interest entitling him to due process.

Nufer asserts that the three Board members should have been disqualified from participating in the Board's hearing on the removal and from voting on the proceedings because of their prehearing statements indicating they had concluded Nufer should be discharged. Nufer contends their participation denied him an impartial and unbiased decision-maker in violation of due process.

The procedural guarantees of the Due Process Clause apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. *Board of Regents v. Roth,* 408 U.S. 564, 569

(1972). Nufer does not argue that a property interest was affected by the Board's action; instead, he asks this court to find that he was entitled to due process because the proceedings against him affected a liberty interest. In a public employment context, liberty is composed of two interests—a reputation interest and an employability interest. The reputation interest has been infringed whenever charges impugn one's good name, reputation, honor, or integrity in the community. Speaking of the reputation interest in *Roth,* the Court said:

"The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. For '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.' *Wisconsin v. Constantineau,* 400 U.S. 433, 437. *Wieman v. Updegraff,* 344 U.S. 183, 191; *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123; *United States v. Lovett,* 328 U.S. 303, 316–317; *Peters v. Hobby,* 349 U.S. 331, 352 (Douglas, J., concurring). See *Cafeteria Workers v. McElroy,* 367 U.S. 886, 898. In such a case, due process would accord an opportunity to refute the charge before University officials." *Id.* at 573.

The employability interest is infringed when the reasons for dismissal are those that would significantly undermine opportunities for future employment. Commenting on the employability interest, the *Roth* Court said:

"Similarly, there is no suggestion that the State, in declining to re-employ the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities. The State, for example, did not invoke any regulations to bar the respondent from all other public employment in state universities." 408 U.S. at 573.

*State ex rel. DeLuca v. Common Council*, 72 Wis.2d 672, 678–79, 242 N.W.2d 689 (1976).

To determine the applicability of due process requirements, we must examine Nufer's contention that both liberty interests were infringed by the charges against him.

The examples of charges affecting the liberty interest in reputation described by the Court in *Roth* are charges of dishonesty and immorality. The cases cited in *Roth* involve charges of alcoholism [*Wisconsin v. Constantineau*, 400 U.S. 433 (1971)]; disloyalty [*Wieman v. Updegraff*, 344 U.S. 183 (1952); *Peters v. Hobby*, 349 U.S. 331 (1955); *Cafeteria Workers v. McElroy*, 367 U.S. 886 (1961)]; communism [*Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123 (1951)]; and subversive activities [*United States v. Lovett*, 328 U.S. 303 (1946)]. None of the charges against Nufer allege him to be immoral or "dishonest in the manner he operated his office," [*State ex rel. DeLuca v. Common Council*, 72 Wis.2d at 679], or accuse him of conduct comparable to charges of disloyalty, communism, subversive activities, or alcoholism. Accordingly, we conclude the Board's action does not damage Nufer's standing and associations in the community to the degree necessary to implicate Nufer's liberty interest in his reputation.

Nufer argues that his liberty interest in employability is implicated. The Board's charges assert that he neglected police business (charges 1, 2, 4, 5, 7, and 12), disregarded police rules and regulations (charges 3, 5, and 11), endangered his own officers (charge 13) as well as undermined their authority (charge 14), and demonstrated a lack of good judgment (charge 15), initiative, leadership, and direction (charge 16). In its determination the Board stated: "The seriousness of the charges proven show that Chief Nufer does not exhibit

the necessary characteristics of leadership, command and respect necessary to serve in the position of Chief of Police."

The Court in *Roth* cited as examples of employment foreclosure entitling the deprived individuals to a due process hearing cases involving state actions which *formally* and *completely* deprived a person of any possibility of pursuing his chosen profession: *Joint Anti-Fascist Refugee Committee v. McGrath, supra* (blacklisting groups' members from any government employment) ; *Truax v. Raich,* 239 U.S. 33 (1915) (statute limiting the percentage of aliens any employer could hire) ; *Schware v. Board of Bar Examiners,* 353 U.S. 232 (1957), and *Willner v. Committee on Character,* 373 U.S. 96 (1963) (denial of applications to the state bar). We recognize that, in applying *Roth,* courts have not limited the applicability of the protection from job foreclosure to situations where the state has formally and completely deprived a person of future employment. Where the state has published allegations that are so serious and derogatory in nature that they effectively foreclose future employment, courts have mandated procedural due process protections. *See, e.g., Lombard v. Board of Education of City of New York,* 502 F.2d 631, 637, (2d Cir. 1974), *cert. denied* 420 U.S. 976 (1975) (charge that employee has serious mental disorder diminishes chance of future employment) ; *Velger v. Cawley,* 525 F.2d 334, 336 (2d Cir. 1975), *rev'd.* on other grounds *sub nom. Codd v. Velger,* 429 U.S. 624 (1977) (allegation of suicide attempt by probationary police officer prevents employment as policeman) ; *United States v. Briggs,* 514 F.2d 794, 798 (5th Cir. 1975) (charge that one has committed serious felony forecloses many employment opportunities) ; *Greenhill v. Bailey,* 519 F.2d 5, 8 (8th Cir. 1975) (allegation of lack of "intellectual ability" against dismissed medical student limits educational, and thus employment, opportunities.

The majority of courts have not found a deprivation of liberty when employers were terminating employees because of the employee's inability to adequately perform his or her job. *See: Mazaleski v. Treusdell,* 562 F.2d 701, 709–14 (D.C. Cir. 1977) (dismissed "on the grounds of marginal and substandard performance") ; *Blair v. Board of Regents of State Univ. & Com. Col. Sys. Tenn.,* 496 F.2d 322, 324 (6th Cir. 1974) (employee "fail[ed] to meet minimum standards") ; *Paige v. Harris,* 584 F.2d 178, 183–84 (7th Cir. 1978) (employee "exhibited inadequate performance") ; *Norbeck v. Davenport Community School District,* 545 F.2d 63, 68–69 (8th Cir. 1976) (employee nonrenewed because of "poor judgment") ; *Gray v. Union County Intermediate Education District,* 520 F.2d 803, 806 (9th Cir. 1975) (nonrenewed teacher had been charged with "insubordination, incompetence, hostility toward authority and aggressive behavior") ; and *Powers v. Mancos School District RE–6, Montezuma Cty.,* 539 F.2d 38, 41 (10th Cir. 1976) (nonrenewal because of "barely adequate" or "minimal" classroom performance). *Cf.: Huntley v. Community School Board of Brooklyn, Etc.,* 543 F.2d 979, 985 (2d Cir. 1976) (principal's future employment opportunities are "seriously impaired" when discharged for "fail[ure] to demonstrate that quality of leadership necessary to effectively deal with the education program," on record shown) ; *Staton v. Mayes,* 552 F.2d 908, 911, n. 7 (10th Cir. 1977) (dismissal on grounds of incompetence and willful neglect of duty has serious adverse effect on career, in view of uncontradicted expert testimony to that effect).

Applying the distinction drawn in the cited cases, we conclude the charges and findings of the Board relate to improper job performance and would not effectively foreclose future employment. Nufer has presented no

evidence to support an argument that he is foreclosed from future employment. Nor do the charges and findings stigmatize or injure Nufer's reputation as would charges of dishonesty or immorality. On the record presented, we conclude no liberty interest is implicated by the Board's actions. Accordingly, the procedural guarantees of the Due Process Clause do not apply.

Because we find due process inapplicable, the question remains whether the evidence was sufficient to sustain the action of the Village Board. On review by certiorari, " 'the findings of the board upon the facts before it are conclusive if in any reasonable view the evidence sustains them.' " *State ex rel. B'nai B'rith F. v. Walworth County*, 59 Wis.2d 296, 303–04, 208 N.W.2d 113 (1973).

The trial court carefully reviewed all of the evidence and modified several of the findings. After a complete review of the evidence by this court, we conclude that the findings of the Village Board as amended by the circuit court are supported by substantial evidence. The Board's action was not "arbitrary, oppressive, or unreasonable," and did not represent "its will and not its judgment." *State ex rel. Ball v. McPhee*, 6 Wis.2d 190, 199, 94 N.W.2d 711 (1959).

*By the Court.*—Judgment affirmed.