STATE of Wisconsin EX REL. Randolph WHITING,
Petitioner-Appellant,

v.

Darrell KOLB, Superintendent, Respondent.

Court of Appeals

*No. 89-1537. Submitted on briefs January 12, 1990.—Decided
September 20, 1990.*

(Also reported in 461 N.W.2d 816.)

229

For the petitioner-appellant the cause was submitted on the briefs of *Randolph Whiting,* pro se, of Waupun.

For the respondent the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *E. Gordon Young,* assistant attorney general.

Before Gartzke, P.J., Dykman and Sundby, JJ.

DYKMAN, J.  Randolph Whiting, an inmate in the Wisconsin State Prison at Waupun, appeals from an order sustaining the action of a prison adjustment committee. The committee found Whiting guilty of violating the prison's policy against ritualistic gang greetings, Wis. Adm. Code, sec. HSS 303.63,[1] and the rule prohibiting

---

[1]As of April, 1990, the regulations of the Department of Corrections have been recodified with the prefix DOC in the

conduct for the purpose of identifying oneself with an inmate gang, sec. HSS 303.20. The first issue is whether the evidence supports the committee's determinations. We conclude the evidence supports a finding that Whiting violated sec. HSS 303.63 but not sec. HSS 303.20. The second issue is whether the prison's policy prohibiting ritualistic greetings is constitutional. We conclude it is. Accordingly, we affirm in part and reverse in part.

## BACKGROUND

On January 20, 1987, Superintendent Warren Young adopted a policy prohibiting inmates from engaging in ritualistic greetings and departures. He issued a memorandum to all inmates, stating:

> It has been noted some inmates have been engaging in a ritualistic greeting and departure that includes, but is not limited to, handshaking combined with embracing or kissing, etc. This ritual is no more than the recognition of one gang member by another and as such is gang symbolism. This is a disruptive influence on the smooth and safe operation of the institution.
> Effective with the publication and distribution of this special, any inmate continuing to use that ritual in any manner or form will be dealt with disciplinarily.
> Promulgated under the authority of Wisconsin Administrative Code, Chapter 303.

On August 22, 1988, Whiting met his brother-in-law, a fellow inmate, in the prison visiting room. He greeted his brother-in-law with a kiss and an embrace. Based on this conduct, Whiting was charged with violat-

---

administrative code. Thus, HSS 303.63, for example, may be found at DOC 303.63.

ing Wis. Adm. Code, secs. HSS 303.20 (group resistance and petitions), HSS 303.63 (violations of institution policies and procedures), HSS 303.15 (sexual conduct), and HSS 303.24 (disobeying orders).

Whiting waived his right to a due process hearing under sec. HSS 303.76(2) and therefore had an informal hearing under sec. HSS 303.75.[2] The adjustment committee determined that Whiting violated secs. HSS 303.20 and HSS 303.63. The other charges were not substantiated. The committee imposed a penalty of three days adjustment segregation and 120 days program segregation.

Whiting appealed the committee's decision to the superintendent. The matter was considered by Thomas Borgen, an associate warden. He sustained the committee's finding of guilt but reduced the punishment to a reprimand. In his memorandum to the superintendent explaining his decision, Borgen stated in part:

> I note that the disposition on this case differs from a recent case. Therefore, I contacted Capt. Oestreich. After reviewing the entire matter with Capt. Oestreich, I believe that a finding of guilt is justified, however, I would reduce the penalty to a reprimand.
>
> It is my belief that this situation presents some legitimate concerns on behalf of hearing officers relative [to] what constitutes a violation and what does not. Therefore, I recommend that the disposition be

[2]Wisconsin Adm. Code, sec. HSS 303.76(2) provides that "[i]f the inmate waives a due process hearing, the conduct report shall be disposed of under the hearing procedures for minor violations, s. HSS 303.75." At an informal hearing under HSS 303.75, the inmate's only right is to appear personally and describe the incident. The inmate has no right to a staff advocate or to present or cross-examine witnesses. The officers who prepared the conduct report need not be present.

reduced to a reprimand in the instance case and that Capt. Oestreich and myself discuss hearing and rules concerns with you at your convenience.

Whiting petitioned for a writ of certiorari. The trial court affirmed the decision.

## STANDARD OF REVIEW

On certiorari, we review the action of the prison adjustment committee independently of the trial court. Our review is limited to the record created before the committee. *State ex rel. Irby v. Israel,* 95 Wis. 2d 697, 703, 291 N.W.2d 643, 646 (Ct. App. 1980). We determine (1) whether the committee stayed within its jurisdiction, (2) whether it acted according to law, (3) whether the action was arbitrary, oppressive or unreasonable and represented the committee's will and not its judgment, and (4) whether the evidence was such that the committee might reasonably make the order or determination in question. *Id.*

The test on certiorari review is the substantial evidence test, under which we determine whether reasonable minds could arrive at the same conclusion the committee reached. *State ex rel. Richards v. Traut,* 145 Wis. 2d 677, 680, 429 N.W.2d 81, 82 (Ct. App. 1988). "The facts found by the committee are conclusive if supported by 'any reasonable view' of the evidence, and we may not substitute our view of the evidence for that of the committee." *State ex rel. Jones v. Franklin,* 151 Wis. 2d 419, 425, 444 N.W.2d 738, 741 (Ct. App. 1989) (quoting *Nufer v. Village Bd. of Village of Palmyra,* 92 Wis. 2d 289, 301, 284 N.W.2d 649, 655 (1979)).

233

## SUFFICIENCY OF THE EVIDENCE

Whiting contends that the evidence does not support the adjustment committee's determination that he was guilty of violating secs. HSS 303.20 and HSS 303.63. Whiting does not dispute that he greeted his brother-in-law with a kiss and an embrace. He contends, however, that the evidence was insufficient to show that he was a gang member or that his greeting was the type used by gang members. He contends that such evidence was necessary to support a guilty finding under secs. HSS 303.20 and HSS 303.63.

The record contains a form worksheet listing the evidence on which the committee relied and the reason for its decision. The committee relied on the conduct report and considered Whiting's oral statement before the committee. According to the conduct report, staff member Meitzen "saw inmate Whiting . . . kiss inmate Hinton on the lips and then embrace with both arms in the visiting room." The reasons the committee gave for its decision were that:

> By admission [Whiting] intentionally hugged and kissed Hinton in the visiting room. It is a known fact that both are associated with the P.M.B. [a prison gang]. It is a known fact that the reason for the memo of 1/20/87 was to stop the ritualistic greeting of the P.M.B. We find he intentionally hugged and kissed Hinton in disobeyance of the memo (movement policy). We find his intentional greeting is not one of affection for his brother in law but was for the purpose of identifying himself as a P.M.B. member.

■

We conclude that the evidence supports the committee's determination that Whiting violated the prison's policy prohibiting ritualistic greetings under sec.

HSS 303.63.[3] According to the conduct report, Whiting was observed greeting his brother-in-law with a kiss and an embrace. At the hearing, Whiting admitted he greeted his brother-in-law in this way. For a violation of the greetings policy, no showing of gang membership is necessary. It is enough that the inmate greets another with a handshake and an embrace or a kiss or with another similar greeting. Whiting's conduct fell within the zone proscribed by the policy because he kissed his brother-in-law.

We conclude, however, that the evidence *does not* support the committee's determination that Whiting violated sec. HSS 303.20(3), which provides:

Any inmate who intentionally participates in any activity with the purpose of identifying himself or herself with an inmate gang, as defined in s. HSS 303.02(9), is guilty of an offense.

■

The committee could not conclude that Whiting violated sec. HSS 303.20(3) unless it found that, in greeting his brother-in-law, Whiting intended to identify himself with a gang. The record does not support the committee's finding that Whiting's greeting was not to show affection for his brother-in-law, but was rather for the purpose of identifying himself with a gang. The committee apparently inferred the gang-related purpose of Whiting's greeting based on its belief that Whiting and his brother-in-law were members of an inmate gang. That inference is impermissible because no evidence of

---

[3]Wisconsin Adm. Code, sec. HSS 303.63(1) provides in part:

(1)  Each institution may make specific substantive disciplinary policies and procedures relating to:

. . ..

(d)  Movement within and outside the institution.

record supports it. Based on the facts of record, the committee could not find that Whiting's greeting had a gang-related purpose.

## CONSTITUTIONAL CHALLENGE

Whiting contends that the prison's policy prohibiting ritualistic greetings is unconstitutional because, as applied to him, the policy violated his rights under the first amendment to the United States Constitution. He also contends that the policy is unconstitutionally vague and overbroad under the due process clause, U.S. Const. amend. XIV, sec. 1.

We first address whether the policy's application violated Whiting's free speech rights. Whiting, in essence, argues his first amendment rights were violated because he greeted his brother-in-law intending to show affection, not gang affiliation. We assume, without deciding, that Whiting's first amendment rights are implicated by the policy prohibiting ritualistic gang greetings, and we conclude that no first amendment violation occurred.

A prison regulation that impinges on an inmate's constitutional rights is valid if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987). The Supreme Court has identified several factors that are relevant to determining the reasonableness of a prison regulation: (1) whether a valid, rational connection exists between the prison regulation and the legitimate government interest; (2) whether alternative means of exercising the right remain open to inmates; (3) whether the accommodation of the asserted constitutional right impacts on guards and other inmates and on the allocation of prison resources gener-

236

ally; and (4) whether ready alternatives to the regulation exist. *Turner,* 482 U.S. at 89–90.

Young's memorandum explains that the reason ritualistic greetings are prohibited is because such gang symbolism leads to disorder within the prison. Eliminating gang activity and maintaining prison order and security are, of course, important penological objectives. Maintaining prison security is of such paramount importance that prison officials are justified in applying the policy to greetings between non-gang members. We conclude that the policy prohibiting ritualistic greetings is rationally related to the policy's objective.

Alternative means of expression remain open to the inmates. They may greet each other verbally without violating the policy, though verbal symbolism is prohibited. "Hello," "Hi," "How are you doing," offer several legitimate greetings. In addition, allowing gang symbolism to continue within the prison poses a threat to the security of other prisoners and guards. Finally, the greetings policy is not an exaggerated response to the institution's concerns about organized gang activity. Gang symbolism helps to perpetuate the existence of gangs in the prison. Prohibiting gang symbolism is a reasonable response to the problem.

We next address Whiting's vagueness challenge under the fourteenth amendment to the United States Constitution. A vagueness challenge is based on "the constitutional principle that procedural due process requires fair notice and proper standards for adjudication." *Hennekens v. River Falls Police & Fire Comm'n.,* 124 Wis. 2d 413, 420, 369 N.W.2d 670, 674 (1985). A person lacks standing to make a vagueness challenge if the rule clearly proscribes their conduct. *City of Milwau-*

237

*kee v. K.F.,* 145 Wis. 2d 24, 33–34, 426 N.W.2d 329, 333 (1988).

We conclude that Whiting lacks standing to challenge the greetings policy because his conduct was clearly prohibited under the policy. The policy put all inmates on notice that greetings involving embracing and kissing were prohibited because they were associated with gang symbolism. Whiting's greeting was of the type prohibited by the policy; therefore, he cannot maintain a vagueness challenge.

Whiting also argues that the policy is overbroad under the first amendment. A rule is "overbroad when its language, given its normal meaning, is so sweeping that its sanctions may be applied to constitutionally protected conduct which the state is not permitted to regulate." *K.F.,* 145 Wis. 2d at 39, 426 N.W.2d at 336 (quoting *Bachowski v. Salamone,* 139 Wis. 2d 397, 411, 407 N.W.2d 533, 539 (1987)). A person may have standing to challenge a rule on overbreadth grounds even though his or her own conduct could constitutionally be regulated under a narrowly drawn law. *Id.* at 40, 426 N.W.2d at 336. To succeed on a first amendment overbreadth claim, the challenger must show that the rule "reaches a substantial amount of constitutionally protected conduct." *Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494 (1982) (footnote omitted).

Whiting argues that the greetings policy is overbroad because it prohibits innocent greetings between non-gang members. We have already rejected Whiting's first amendment claim and found that the policy may reach conduct between non-gang members without offending the constitution. A precondition to invocation

of the overbreadth doctrine is constitutionally protected conduct which the state may not regulate. *See K.F.,* 145 Wis. 2d at 39, 426 N.W.2d at 336. Having not established the policy affects such conduct, Whiting's overbreadth claim fails.

*By the Court.*—Order affirmed in part and reversed in part.

SUNDBY, J. *(dissenting).* On January 20, 1987, Superintendent Young posted the following notice to all inmates:

> It has been noted some inmates have been engaging in a ritualistic greeting and departure that includes, but is not limited to, handshaking combined with embracing or kissing, etc. This ritual is no more than the recognition of one gang member by another and as such is gang symbolism. This is a disruptive influence on the smooth and safe operation of the institution.
>
> Effective with the publication and distribution of this special, any inmate continuing to use that ritual in any manner or form will be dealt with disciplinarily.
>
> Promulgated under the authority of Wisconsin Administrative Code, Chapter 303.

Kolb represents that this regulation was promulgated under Wis. Adm. Code sec. HSS 303.63 which provides in part: "(1) Each institution may make specific substantive disciplinary policies and procedures relating to: . . . (d) Movement within and outside the institution . . .."

It is not necessary that we reach Whiting's claim that the regulation is vague and overbroad, for it is plain that the regulation has nothing to do with movement within the institution and is not authorized by sec. HSS

303.63. The department's interpretive note to sec. HSS 303.63 states:

> .Each institution, due chiefly to its unique physical facilities, security requirements and programs, must have the authority to regulate the matters specified in sub. (1) more specifically and frequently than is possible through the rulemaking process. This section provides the authority to do so. Only violations of policies and procedures authorized under this section and specifically under this chapter may be treated as violations permitting punishment. *Such policies and procedures must be related to the objectives under HSS 303.01.* [Emphasis added.]

Section HSS 303.01(3) provides in part: "The objectives of the disciplinary rules under this chapter are the following: (a) The maintenance of order in correctional institutions . . .." Subsection (3) enumerates other objectives but it is clear from Superintendent Young's special rule, that the rule is based on the objective of maintaining order in the institution. His memo states: "This [ritual] is a disruptive influence on the smooth and safe operation of the institution."

I conclude that the regulation of movement within the institution furthers the objective of maintaining order. If inmates are allowed to move about the institution as they please, obvious security problems are presented. We therefore should give a broad construction to Superintendent Young's special rule, if that rule furthers the objective of maintaining order within the institution. I cannot, however, stretch "movement" to include handshakes, embracing or kissing.[1] "Movement" is defined as "the act, process, or result of moving." The

---

[1] The kissing aspect of the ritual could not be used by the committee to support its finding of a violation of sec. HSS 303.63

Random House Dictionary of the English Language 1258 (2d ed. unabridged 1987). To "move" means "to pass from one place or position to another." *Id.* Of course, "move" can also mean "to change from one place or position to another." *Id.* Kolb does not suggest, however, that "movement" was intended to apply to the motion of the inmate's arms or lips in handshaking, embracing, or kissing. Such a construction of the word would be unreasonable.

Superintendent Young's special rule is therefore not within the contemplation of sec. HSS 303.63(1)(d).

because Whiting was acquitted of "sexual conduct." Sec. HSS 303.02(15)(a) defines "sexual contact" to include "kissing."