**COURT OF APPEALS
DECISION
DATED AND FILED**

**July 31, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2018AP283**

Cir. Ct. No. 2017CV338

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT II**

GAIL MORESCHI,

   PLAINTIFF-APPELLANT,

 V.

VILLAGE OF WILLIAMS BAY AND TOWN OF LINN ETZ ZONING BOARD OF APPEALS, WILLIAM L. EDWARDS AND SUZANNE EDWARDS,

   DEFENDANTS-RESPONDENTS.

        APPEAL from an order of the circuit court for Walworth County: DAVID M. REDDY, Judge. *Affirmed.*

        Before Reilly, P.J, Gundrum and Hagedorn, JJ.

        ¶1      HAGEDORN, J.   William and Suzanne Edwards wanted to rebuild their home, but their plans required a setback variance.  They sought and received the variance from the Village of Williams Bay and Town of Linn Extraterritorial

Zoning Board of Appeals (the Board).[1] One of their neighbors, Gail Moreschi, was not pleased and filed a certiorari complaint challenging the Board's decision. The circuit court denied the challenge, as do we.

¶2 Moreschi objects to the decision on both procedural and substantive grounds. Procedurally, she challenges the content of the record before us, asserting that the Board improperly filed new minutes and issued a new decision after she brought suit, along with various swings-and-misses by the Board in complying with certain deadlines. We find none of these challenges availing. Moreschi filed suit before the Board had formalized its decision following the public hearing. Moreschi cites no authority for the proposition that the Board cannot complete its work under these circumstances. Substantively, Moreschi maintains that the Board's decision was unreasonable and unsupported. This challenge too falls flat. We affirm.

## BACKGROUND

¶3 In November 2016, the Edwards applied for a variance from the setback requirements of Village of Williams Bay Extraterritorial Zoning (ETZ) Ordinance § 18.1703M(D).[2] Understanding the general chronology of the

---

[1] The Board acts as the zoning board of appeals for the extraterritorial zoning jurisdiction of the Village of Williams Bay, which includes certain territorial overlap with the Town of Linn in Walworth County. Village of Williams Bay Extraterritorial Zoning (ETZ) Ordinance §§ 18.1701B, 18.1716(A).

[2] The ordinance requires that unsewered single-family residences maintain minimum setbacks of twenty-five feet for rear yards and fifteen feet for side yards. ETZ Ordinance § 18.1703M(D). The Edwards sought a rear-yard setback of eighteen feet and a side-yard setback of six feet.

proceedings that followed is important for purposes of Moreschi's procedural challenges on appeal.

¶4     On May 23, 2017, the Board held a public meeting during which testimony and argument were presented for and against the Edwards' application. Moreschi—whose property abuts the Edwards'—was among those who opposed the variance request. At the conclusion of the meeting, the Board unanimously voted to grant the application.[3]

¶5     On June 12, 2017, Moreschi filed a complaint with the circuit court seeking certiorari review of the Board's decision. On June 28, 2017, the court granted review and issued a writ of certiorari to be served on the Board.

¶6     Also on June 28, 2017, Moreschi obtained a copy of the minutes from the May 23 meeting through an open records request. The copy describes the consideration of the Edwards' application as follows:

> **Board of Appeals Decision:** The Village of Williams Bay Extraterritorial Zoning Board of Appeals, during the meeting of March 23, 2017 for the petition of Williams [sic] and Susan Edwards requesting a variance to the zoning code section 18.1703M(D) to allow a rear yard setback of 18' (25' required) and a side yard setback of 6' (15' required). Robert Winter moved to **APPROVE** the request. Richard Tuma seconded the motion. A vote was taken and carried unanimously by those present. 4 – AYE (Richard Tuma, Vernon Choyce, Mike O'Brien, Robert Winter), 0 – NAY. The request was **APPROVED**.
>
> **Board of Appeals Findings:**
>
> The Village of Williams Bay Extraterritorial Zoning Board of Appeals felt that there was a lack of detriment and allowed the variance.

_____

[3] The Edwards had also earlier received approval for the variance from the Town of Linn Plan Commission.

¶7     On July 7, 2017, the Board was served with the writ, which ordered it to respond to the court in ten days with "a correct transcript of the record and proceedings in the action, together with all applications, process, pleadings, entries, exhibits, and documents made, filed or returned, to the end that [the court] may further act."

¶8     On July 28, 2017, in a letter to the court, the Board stated that it was still in the process of assembling the record for its return on certiorari.  Related to that record, the Board explained that Moreschi had obtained a "draft of minutes for [the May 23] hearing" that still needed to be approved and finalized at its next scheduled meeting.  It further noted that a written decision on the Edwards' application was forthcoming.

¶9     On July 31, 2017, the Board held its next meeting, during which it approved and finalized the May 23 minutes and produced a written decision.  Like the minutes Moreschi received through her open records request, the finalized minutes reflect that the Board unanimously voted in favor of approving the variance.  The findings in the finalized minutes now read:

> The Village of Williams Bay Extraterritorial Zoning Board of Appeals having considered all of the testimony and evidence presented at the hearing found beyond a reasonable doubt that all of the facts and conditions set forth in ETZ Zoning Ordinance [§] 18.1716(H) exist in favor of granting the requested variance.  The Board reviewed the application for variance and attached documents; letter from Town of Linn approving the variance; letters from citizens in favor and opposed to the variance; documents presented by Attorney Thompson; along with other documents presented at the hearing.  The Board heard testimony from Mr. Edwards and his attorney, Mara Sping re: why the variance was necessary.  The Board heard testimony from citizens in favor and opposed to the variance, including Attorney Thompson on behalf of Ms. Moreschi.

4

The written decision—which was signed by the four Board members who granted the application—contained an extended narrative on the Board's factual findings and conclusions in light of the evidence presented at the hearing.

¶10 The next day—August 1, 2017—the Board submitted its return, attaching the finalized minutes and the written decision. Upon review, the circuit court affirmed the Board's decision, and Moreschi now seeks relief from this court.

## DISCUSSION

¶11 On an appeal from a circuit court order on certiorari, this court reviews the decision of the Board. *Hearst-Argyle Stations, Inc. v. Board of Zoning Appeals of Milwaukee*, 2003 WI App 48, ¶12, 260 Wis. 2d 494, 659 N.W.2d 424. In order for us to review the Board's decision here, we must first resolve the parties' disagreement as to what constitutes the actual decision and Moreschi's other challenges to the content of the record. Then we assess Moreschi's substantive challenges to the decision.

*Moreschi's challenges to the content of the record*

¶12 Moreschi raises multiple issues with the nature of the record before us. First, she contends that, in considering the Board's decision, we should review the transcript of the oral ruling from the May 23 meeting, or alternatively, the meeting minutes she obtained through her open records request. The Board asserts that we should review the written decision it filed with its return on certiorari. The Board is correct.

5

¶13    WISCONSIN STAT. § 62.23(7)(e)10. (2017-18),[4] the provision governing certiorari review, provides in relevant part:

> Any person or persons, jointly or severally aggrieved by any decision of the board of appeals, or any taxpayer, or any officer, department, board or bureau of the municipality, may, within 30 days *after the filing of the decision in the office of the board of appeals*, commence an action seeking the remedy available by certiorari.

*Id.* (emphasis added).   The legislature is clear that the proceedings in court are appeals from the Board's "decision."   *See also* § 62.23(7)(e)14. (relating to costs for gross negligence, bad faith, or malice by the board "in making *the decision appealed from*" (emphasis added)).   And more to the point, the "decision" is not simply an oral vote; it is something that is filed in the office of the board of appeals.

¶14    The ordinances governing the Board's decision making also seem to separate what occurs at the hearing from the written, appealable decision. Specifically, ETZ Ordinance § 18.1716(J) requires the Board to decide the appeal within thirty days of the hearing and then to "transmit a signed copy of the Board's decision to the appellant or applicant, Zoning Administrator, and ETZ Joint Committee."   The decision, then, must be something written and signed by the Board.

¶15    The record only contains one item that fits this definition:  the written decision—called a "Determination Form"—that explains the vote of the Board, its reasoning, and is signed by members of the Board.   The best, and maybe only, reading of the record is that the "decision" being appealed from is the

---

[4] All references to the Wisconsin Statutes are to the 2017-18 version.

Board's written decision approved on July 31, and transmitted as the decision to the court on August 1.

¶16    Moreschi would rather have the court focus on the transcript of the oral hearing or the meeting minutes she obtained via her open records request. But these simply do not fit the bill, and Moreschi offers nothing legally or factually to suggest these things constituted the Board's written and signed decision.

¶17    Moreschi also raises additional procedural challenges to the scope of the certiorari record, namely that neither the finalized minutes nor the written decision should be included in the record due to the Board's failure to comply with certain time limitations.

¶18    As to the written decision, Moreschi first contends that the Board failed to comply with the thirty-day time limitation in ETZ Ordinance § 18.1716(J) ("The [Board] shall decide all appeals and applications within thirty (30) days after the final hearing …."). Moreschi argues that because the written decision was filed more than thirty days after the May 23 meeting, the Board failed to abide by the ordinance and its decision to grant the Edwards' application should be reversed. Even if Moreschi is correct that the Board's decision was late, nothing in the ordinance's text suggests that the proper consequence is rejection of the Edwards' application. Likewise, Moreschi has offered no legal support for her argument that the ordinance somehow foreclosed the Board from issuing a tardy decision approving the application. Given that, if anything, the appropriate remedy for the Board's failure to issue a timely decision would likely have been a writ of mandamus ordering it to act on the application—as it proceeded to do so

with the written decision in the record before us—this argument does not offer Moreschi the relief she seeks.

¶19    Moreschi also asserts that the finalized minutes should not be included in the record because they were not "immediately filed," as required by WIS. STAT. § 62.23(7)(e)3. and ETZ Ordinance § 18.1716(C)(2).  To the contrary, the Board filed its May 23 minutes the day after they were approved and finalized at its next meeting.  Nothing in the cited provisions indicates that this procedure was somehow improper.  And again, we see no reason why an initial draft of minutes obtained through an open records request should somehow supplant the approved and finalized minutes.

¶20    Finally, Moreschi argues that the finalized minutes and written decision should be excluded from our consideration because they were only created after her certiorari action commenced.  Without citing legal authority, she claims that her due process rights will be "nullified" if we consider this "supplemental evidence."  This argument is based on an unstable foundation— namely, that the Board was foreclosed from acting on the underlying matter after certiorari was sought just twenty days after the hearing and before any decision was written, signed, and filed with the board of appeals.  Moreschi provides no basis in Wisconsin law to suggest that by filing her petition less than three weeks after the hearing, the Board was stuck with a draft of unapproved minutes and had no opportunity to put pen to paper and produce a written decision that would be filed as required by law (and therefore make it into the record).  We find no reason

to conclude that the Board improperly supplemented the certiorari record with untimely evidence.[5]

*Moreschi's challenges to the substance of the Board's decision*

¶21    Having concluded the written and signed decision approved by the Board on July 31 is in fact the subject of our certiorari review, we now turn to Moreschi's substantive challenges to that decision.  In cases where no additional evidence is taken by the circuit court, this court's certiorari review is limited to (1) whether the Board kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether it might reasonably make its decision in light of the evidence.  ***Ottman v. Town of Primrose***, 2011 WI 18, ¶¶35, 43, 332 Wis. 2d 3, 796 N.W.2d 411.  In so doing, we grant a presumption of correctness and validity to the Board's decision.  ***State ex rel. Ziervogel v. Washington Cty. Bd. of Adjustment***, 2004 WI 23, ¶13, 269 Wis. 2d 549, 676 N.W.2d 401.

¶22    Moreschi asserts that the Board acted outside of its jurisdiction by filing its written decision after she commenced her certiorari action.  We rejected this theory above.  Moreover, ETZ Ordinance § 18.1716(D)(2) vests the Board with authority "[t]o hear and grant appeals for variances."  *See also* WIS. STAT. § 62.23(7)(e)1. (allowing boards of appeal to authorize variances from the terms of

---

[5] We are not unmindful of the fact that Moreschi likely did not have the easiest time determining what would end up constituting an appealable decision from the Board.  We do not fault Moreschi for acting out of an abundance of caution so as not to miss the thirty-day appeal deadline.  That said, her actions still do not deprive the Board of the opportunity to finish its work on the variance request by drafting and approving a written decision and finalizing minutes from the prior meeting.

zoning ordinances). Therefore, the Board's decision to grant the Edwards' application was squarely within its jurisdiction.

¶23 Moreschi next argues that the Board proceeded on an incorrect theory of law because it failed to follow ETZ Ordinance § 18.1716(H), which dictates the Board may only grant a variance if it finds and indicates in its meeting minutes that five conditions exist beyond a reasonable doubt: preservation of intent, exceptional circumstances, economic and self-imposed hardship not sole basis, preservation of property rights, and absence of detriment.

¶24 Moreschi relies on her mistaken theory that the Board's decision is reflected in the meeting minutes she obtained through her records request. Unlike those minutes, the Board's written decision sets forth its particular findings for each of the five conditions:

> The Board found beyond a reasonable doubt that: (1) the requested variance is consistent with the purpose and content of the regulations for the district and a permitted use—a single family residence; (2) exceptional circumstances exist re: the location of the septic system on the lot and a 12% slope on the lot justifying the requested variance; (3) economic hardship is not the basis for granting the variance; (4) the variance is necessary to preserve the property rights and enjoyment of the property by the owner who looks to build a single family home on the property that is consistent with other homes in the district; and (5) the variance will not create a substantial detriment to the adjacent properties because the new home will be set back further from the property lines than the pre-existing home.

And consistent with the ordinance, the same findings are identified in the Board's finalized minutes. With this evidence, we conclude that the Board operated under the correct theory of law in rendering its decision.[6]

¶25 Moreschi also claims that the Board's decision was arbitrary, oppressive, or unreasonable and representative of its will instead of its judgment. She particularly disputes that the conditions of preservation of intent and exceptional circumstances were not found—as required by ETZ Ordinance § 18.1716(H)—because they were not referenced in the minutes she originally obtained or the meeting transcript. Even so, the finalized minutes and the written decision both reflect that the Board found those conditions existed beyond a reasonable doubt. As quoted above, the Board's decision details why each of the disputed conditions was found. These findings are reasonable and supported by the evidence that the Board stated it relied upon in rendering its decision. To the extent that Moreschi asks us to consider the merits of those findings anew, she does so to no avail as that is not our standard of review. *See **Lamar Cent. Outdoor, Inc. v. Board of Zoning Appeals of Milwaukee***, 2005 WI 117, ¶25, 284 Wis. 2d 1, 700 N.W.2d 87 ("The court should not disturb a board's findings if any reasonable view of the evidence supports them.").

---

[6] Even if we found merit in Moreschi's argument that the certiorari record should be confined solely to the originally obtained minutes—a conclusion we do not reach—the appropriate form of relief does not match her request for reversal of the Board's decision. A court reviewing a decision pursuant to WIS. STAT. § 62.23(7)(e)10. is limited to affirm, reverse, or modify that decision. In instances where a decision is not sufficiently definite and certain, it is also possible for a certiorari court to remand to the administrative board for clarification of the specific findings of fact and conclusions of law underlying that decision. *See, e.g.*, ***Edmonds v. Board of Fire & Police Comm'rs of Milwaukee***, 66 Wis. 2d 337, 349, 224 N.W.2d 575 (1975). Given that the minutes Moreschi obtained show that the Edwards' application was granted despite the absence of additional factual findings that were later included in the finalized minutes, this remedy would be appropriate.

¶26    Still under this element of our review, Moreschi contends that the Board was unfairly biased against her at the May 23 meeting. She points to an originally published agenda for the meeting that listed the Edwards' application under the subheading "Approve Variance," as well as a statement from a Board member that the proceedings on the proposed variance were of a reoccurring nature. The record shows that the agenda was modified before the meeting to read "Consider Variance." It also establishes that, in context, the member's statement merely reflected on the fact that procedural irregularities had forced the Board to have to grant the same variance multiple times. In sum, we find neither claim to be compelling in showing that the Board acted with impermissible bias.

¶27    Finally, Moreschi argues that the Board's decision was not reasonable in light of the evidence. In so doing, Moreschi does not offer additional argument, but instead rests her assertion on the myriad contentions we have discussed and rejected above. Our foregoing analysis of the record supports a conclusion that the Board's decision was reasonably made.[7]

## CONCLUSION

¶28    The Board's decision to grant the Edwards' variance application is adequately supported by the record. Because Moreschi has not overcome the presumption of correctness we accord to that decision, we affirm.

---

[7] To the extent that Moreschi has made any argument beyond those addressed in this opinion, such argument has been left undeveloped or unsupported or both. *State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (declining to review arguments that are undeveloped or unsupported).

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.

No.    2018AP283(D)


¶29    REILLY, P.J.  (*dissenting*).  I respectfully dissent as the Board violated its own laws in granting a variance to Edwards.[1]

¶30    The Village (as is its right) has an antiquated ordinance that prohibits a variance from being granted for "Economic Hardship [or] Self-Imposed Hardship."  ETZ Ordinance § 18.1716(H).  This case is analogous to *Snyder v. Waukesha County Zoning Board of Adjustment*, 74 Wis. 2d 468, 478, 247 N.W.2d 98 (1976), in which John Snyder, who had a substandard sized lake lot, requested a side-yard setback variance for his porch as the porch would not fit on any other side of his home.  The ordinance in *Snyder*, like here, only allowed a variance if "unnecessary hardship" was shown.  *Id.* at 471-72.  The issue before our supreme court was whether the board properly exercised its discretion in denying Snyder's request for a variance.  *Id.* at 471.  Our supreme court explained that to justify a finding of "unnecessary hardship" it must appear that the property "cannot yield a reasonable return when used for the permitted purposes" or that "no feasible use can be made of the land."  *Id.* at 474, 478 ("[P]ersonal inconvenience do[es] not constitute practical difficulties or unnecessary hardship which justif[ies] a variance.") (citations omitted).[2]

---

[1]  I refer to William L. Edwards in this dissent in the singular as "Edwards," recognizing that Suzanne Edwards is also a party to this action.

[2]  In *Snyder v. Waukesha County Zoning Board of Adjustment*, 74 Wis. 2d 468, 476, 247 N.W.2d 98 (1976), the porch had already been built as Snyder claimed the building inspector had given him a building permit.  The court found that a building permit cannot confer the right to violate the ordinance and affirmed the order that the porch had to be removed.  *Id.* at 476-77, 479.

¶31     In our case, there was no proof by Edwards that he could not use his property absent a variance, and the Board never found, nor recorded in its minutes, that Edwards proved beyond a reasonable doubt that he had to have a variance in order to use his property.[3]     It was Edwards' burden to prove the need for a variance.  Board Member Vernon Choyce discussed that Edwards' home design was a self-imposed hardship as he had the ability to put a home on the lot and stay within the ordinance requirements.[4]  Choyce also opined that in his view there was no showing by Edwards that the home could not have been built within the setbacks as required by ordinance.

¶32     Nor was there any adherence by the Board to its own ordinance requirements.  The variance ordinance expressly requires that the Board may not grant a variance unless it found beyond a reasonable doubt that *all* five enumerated "facts and conditions"[5] existed and "*so indicates such in the minutes of its proceeding.*"  ETZ Ordinance § 18.1716(H) (emphasis added).  During the hearing, the attorneys for Moreschi and Edwards were the only ones who either addressed the five "facts and conditions" or mentioned the applicable beyond a

---

[3] Edwards' application requested a variance from the twenty-five foot rear-yard setback requirement (Edwards requested eighteen foot setback) and a variance from the fifteen foot side-yard setback (Edwards requested a six foot setback for his side yard).

[4] Edwards claimed that due to a twelve percent slope on his property "they are limited in where they can place the home on the lot."  The Board expressly contradicted that claim in comments by Choyce, noting that he "built in Knollwood and put a house on a lot that had a significant slope for a client [and] we were able to make everything work … inclusive of the septic system."  Choyce found no definitive showing by Edwards "that if [he] didn't have this variance, there would no[t] be any building … able to be built there or building of substantial use to the … owner of the property."

[5] The Board must find beyond a reasonable doubt that all of the following facts and conditions exist in order to grant a variance:  (1) preservation of intent, (2) exceptional circumstances, (3) economic hardship and self-imposed hardship (are not grounds for variance), (4) preservation of property rights, and (5) absence of detriment.  ETZ Ordinance § 18.1716(H).

reasonable doubt standard. At the end of the hearing, a board member made a "motion to approve." It was seconded, and without any further discussion by the Board—devoid of any findings that Edwards proved the five factors/conditions for a variance beyond a reasonable doubt—it was passed. The minutes of the May 23, 2017 board meeting reflect that the only condition for granting the variance was the "lack of detriment" condition. The ordinance does not allow "lack (absence) of detriment" to be the sole reason for granting a variance and expressly requires all five "facts and conditions" to be proved beyond a reasonable doubt. *See* ETZ Ordinance § 18.1716(H).

¶33     I also dissent on the grounds that the later-filed (seventy days after the May 23, 2017 hearing and fifty days after Moreschi filed this certiorari action) scrivener's summary of the Board's decision should not be part of the record as it was not timely and also invents facts and findings that never occurred at the May 23, 2017 hearing. *See **State ex rel. Irby v. Israel***, 95 Wis. 2d 697, 703, 291 N.W.2d 643 (Ct. App. 1980) (indicating that on review of certiorari, the court is limited to the record before it, and facts which are not in the record cannot be added to it); *see also **State ex rel. Whiting v. Kolb***, 158 Wis. 2d 226, 233, 461 N.W.2d 816 (Ct. App. 1990). The Board was obligated by its own ordinance to "immediately" file written findings in the office of the Board and make them a public record.[6] ETZ Ordinance § 18.1716(C)(2). The ordinance also provides that "[t]he Zoning Board of Appeals *shall decide all appeals and applications within thirty (30) days after the final hearing* and shall transmit a signed copy of the

---

[6] The Board did immediately create minutes from the May 23, 2017 hearing, which showed the only reason for granting the variance was "lack of detriment." From a review of the transcript of the hearing, however, it is clear that not even "lack of detriment" was discussed by the Board at the time of its vote to grant the variance.

Board's decision to the appellant or applicant, Zoning Administrator, and ETZ Joint Committee." *See* ETZ Ordinance § 18.1716(J) (emphasis added).

¶34 The Board acknowledges that it is required to decide all appeals within thirty days, but argues that ETZ Ordinance § 18.1716(J) does not impose a time limit for completion and transmittal of the written decision to those parties entitled to receipt thereof. I disagree. The Board's reading of the statute implies that while it must make a decision within thirty days, it has no obligation to release a written decision within that time period. Two problems: (1) it is directly contrary to the ordinance and (2) the late-filed written decision misrepresents the testimony and findings made by the Board on May 23, 2017.[7] The Board's theory leaves a party aggrieved by a Board's decision without the basis for the grant or denial of a variance, which is at odds with the statutory requirement that a writ of certiorari must be commenced within thirty days of a final decision. WIS. STAT. § 62.23(7)(e)10. Section 62.23(7)(e)3. and ETZ Ordinance § 18.1716(C)(2) also require that the written findings *must* ("shall") "be immediately filed." The Board's final decision was made when they granted the variance at the hearing on May 23, 2017, and noted in its minutes that "lack of detriment" was the sole basis for granting the variance. The Board's unlawful and unfair creation of new minutes and a new decision (both of which misrepresent the record) after Moreschi commenced this certiorari action is both untimely and questionable.

¶35 The Board's behavior fails to comport with "[t]he concept of due process and fair play." *See* **Snajder v. State**, 74 Wis. 2d 303, 313, 246 N.W.2d

---

[7] The transcript of the May 23, 2017 hearing is the best evidence of what the Board did and did not find.

665 (1976). The transcript of the May 23, 2017 hearing reflects that the Board neither discussed nor found all the factors the Board was obligated to address as set forth in ETZ Ordinance § 18.1716(H). The Board's manufactured "decision" seventy days later—after it learned what it did was wrong via Moreschi's certiorari action—invented findings that were never made by the Board and violated due process and is not fair play.

¶36 The Board failed to proceed on a correct theory of law and its decision was arbitrary, oppressive, unreasonable, and represented the Board's will and not its judgment. I would vacate the grant of the variance.